## OMMEN v. TALCOTT.

### (Circuit Court of Appeals, Second Circuit. July 10, 1911.)

#### No. 234.

1. FACTORS (§ 1*)—DEFINITION—"SELLING AGENT"—"COMMISSION MERCHANT."

    A "selling agent," "factor," or "commission merchant" is one who sells goods which another person has delivered to him for that purpose and receives compensation for his services by a commission or otherwise.

    [Ed. Note.—For other cases, see Factors, Cent. Dig. § 1; Dec. Dig. § 1.*

    For other definitions, see Words and Phrases, vol. 2, p. 1305; vol. 3, pp. 2640–2612; vol. 8, p. 7660.]

2. BANKRUPTCY (§ 303*)—PREFERENCE—RECOVERY—EVIDENCE OF LIEN.

    In a suit to recover a preferential transfer of property by a bankrupt, in which the defendant claimed a factor's lien, evidence *held* not to show that defendant or any one in his behalf was ever in the physical possession, custody, and control of the property.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

3. FACTORS (§ 47*)—LIEN—POSSESSION.

    It is absolutely essential to the validity of a factor's lien for advances that the property consigned be delivered by the consignor to consignee.

    [Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 65–71; Dec. Dig. § 47.*]

4. BANKRUPTCY (§ 188*)—PREFERENCES—RECOVERY—EVIDENCE—LIENS.

    In a suit to recover a preferential transfer of property by a bankrupt, in which defendant claimed a factor's lien for advances made to the bankrupt, it appeared that the bankrupt and defendant had entered into a contract by which all sales of consigned goods should be in the name of defendant and invoiced to the purchasers in the name of defendant followed by the name of the bankrupt corporation, and, while defendant made no sales, the goods were invoiced to customers as "bought of J. A. T.," defendant, with the name of the bankrupt corporation on a lower line. The contract provided that certain accounts, where advances had been made on the goods about to be sold, should pass to defendant. *Held* that, in cases where the purchaser was notified by the invoice that he owed the money to defendant, this was an assignment of that account, and, where made before defendant had reasonable cause to believe that a preference was intended, was not obnoxious to the provisions of the bankrupt act.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

Appeals from the District Court of the United States for the Southern District of New York.

Suit by Alfred E. Ommen, as trustee in bankruptcy of the John A. Baker Notion Company, against James Talcott. From a final decree of the District Court (175 Fed. 261), both parties appeal. Reversed and remanded.

See, also, 180 Fed. 925.

This cause comes here upon appeal from a final decree of the District Court, Southern District of New York, in favor of complainant, for something over $23,000. The decree further provided that complainant should make certain payments to the special master and others, and should pay $43 taxable costs to defendant.

The action was brought to recover a preferential transfer of property by the bankrupt to defendant, made shortly before bankruptcy. Upon the trial Judge Holt held complainant entitled to recover for certain goods and

also for certain accounts current which defendant had collected, and ordered an accounting. After the accounting the case came, upon report of the special master, before Judge Hand, whose opinion will be found in 175 Fed. 261.

Fried & Czaki (F. M. Czaki, of counsel), for complainant.

Rounds, Schurman & Dwight (G. W. Schurman & Augustus L. Richards, of counsel), for defendant.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Defendant claims that he was the factor of the bankrupt, having a factor's lien upon the goods which the bankrupt had purchased. Finding that failure was imminent, he removed such goods on December 15, 1902 (the day before petition was filed), from No. 394 Broadway, where the bankrupt had its place of business, to the premises or place of business of defendant at No. 110 Franklin street. The goods so removed were, concededly, the property of the bankrupt, and such removal was a transfer of that property, the effect of which if enforced would be to enable defendant to obtain a greater percentage of his demand than any other creditor of the same class. Concededly, too, at the time of removal, defendant's agents had reasonable cause to believe that it would have such effect. The sole question to be determined is whether defendant had a lien upon the goods which warranted his taking them as stated and disposing of them to obtain the repayment of his advances. The suit is brought under sections 60a and 60b of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445)], and under the amendments of 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp St. Supp. 1909, p. 1308]) the District Court had jurisdiction. This suit was not a "bankruptcy case pending" when the amendments were passed, and therefore not affected by the exception in section 19 of the amending act.

The bankrupt is a corporation, which for about a year prior to December 6, 1901, had been engaged in the notion and small ware (dry goods) business at 114 Franklin street. Defendant has for many years been engaged in the dry goods business; his place of business during the period in question being at 108 and 110 Franklin street. Defendant and the bankrupt on December 6, 1901, entered into a written agreement, which contained the following provisions:

"The John A. Baker Notion Company herewith constitute and appoint James Talcott its sole factor, supervisor and selling agent and agree to consign to him during the continuance of this agreement, the entire stock of goods now or hereafter owned by them, or purchased by them, for sale upon commission. All sales of the consigned goods shall be in the name of James Talcott, and invoiced to the purchasers in the name of James Talcott, John A. Baker Notion Company Department."

2. The Baker Company is to assign to defendant all its outstanding accounts and to notify customers of such assignment.

3. Talcott is to employ and pay a bookkeeper who shall keep the book of accounts at his main store, 108–110 Franklin street, Talcott is to "attend to the collection of accounts and all questions as to

credit shall be decided by him and he shall own and pay for all books of accounts used in the business of said agency."

4. The Baker Company is to pay all other expenses incurred in the said business, including rent, salary of salesmen, or other employés, stationery, postage, telegrams, packing, cartage and storage, incidental expenses, and the premium of insurance; insurance to be in the name of and payable to Talcott.

6. Talcott "shall have the exclusive possession and control of said consigned goods, together with the accounts arising from the sale thereof and all remittances, checks, bills payable and proceeds of sales, shall be the exclusive property of James Talcott."

7. Talcott agrees to advance a certain percentage on the accounts assigned to him, with certain deductions.

8. He "may advance in his discretion an amount which shall be satisfactory to him upon the merchandise which may be consigned from time to time." It is agreed that the consigned merchandise be held by him as additional security for his advances upon the outstanding accounts.

He is to receive certain specified commissions for his services.

The Baker Company agrees to assign to Talcott the lease of any premises occupied by them, and he "shall have the exclusive control of said premises." Upon the expiration of the agreement by expiration of time or otherwise the Baker Company agrees to accept the reassignment of the lease for its unexpired term.

11. A sign is to be placed at the entrance of the building at which this business shall be conducted which shall read as follows: James Talcott, Annex John A. Baker Notion Company Department.

Talcott shall not guarantee the payment of sales and all the sales shall be made at the risk of the Baker Company.

The Baker Company, subject to the approval of Talcott, may designate the persons on and about the sale of the said goods and in and about the said agency. Talcott shall not be responsible for acts or omissions of persons so designated.

The agreement is to last for a year and to continue thereafter subject to termination by either party on 30 days' notice.

[1, 2] A selling agent, factor, or commission merchant is one who sells goods which another person has delivered to him for that purpose and receives compensation for his services by a commission or otherwise. Notwithstanding the statements contained in the agreement, we cannot find out that defendant ever sold a dollar's worth of the bankrupt's goods. All sales were made by salesmen whom defendant employed and paid; with such sales Talcott was in no way concerned. Defendant's brief contains the statement that the goods were sold as well as invoiced to customers in his name. The parts of the record referred to do not indicate that the sale was made in his name; the goods, however, were invoiced to customers as: "Bought of James A. Talcott," with the words, "John A. Baker Notion Co. Department," on a lower line. The Baker Company kept on buying goods just as it had before, taking them into its custody and control, handling, holding, and disposing of

them by its own employés whom it selected and paid. The most conspicuous sign, stretching across the front of the building, remained, as before, "John A. Baker Notion Company." The same title also appeared on smaller signs at the entrance door and at the head of the stairs, accompanied with the words, "James Talcott Annex." This would be a not inappropriate designation of premises where the Baker Company conducted its business, and where Talcott also had quarters for the transaction of some business of his own. Four witnesses, called by defendant, all commission merchants, testified that according to their understanding and the custom of their trade the presence of such an annex sign would indicate that the person whose name immediately preceded the word "annex" was financing the business and had a lien on the goods of the person whose name followed the word "annex." On cross-examination at least one of them admitted that the latter might also have goods of his own there for sale on which advances had not been made and on which no lien was claimed. The Baker Company, as we have seen, bought goods solely on its own credit, paying with its own checks; it also paid the duties, rent, and all business expenses. The goods it bought were delivered by the sellers to it at 114 Franklin street and afterwards at 394 Broadway, where they were received and cared for by its employés. When the company wanted an advance, it made out upon a blank furnished by the defendant a so-called "consignment invoice," which contained a list of goods with date of purchase, name of seller, amount, and (if imported) amount of duty. Upon the receipt of this invoice defendant made an advance to the extent stipulated in the agreement; occasionally he would make advances before the consignment invoice was made out. When such invoice was delivered, no change was made in the situation or condition of the goods, nor were any marks indicating a delivery to Talcott placed upon them. They remained where they had been on the premises where the Baker Company conducted its business and in the possession and control of its employés. There were three sets of keys of the premises, one carried by the vice president, one by the secretary and treasurer, and one by a minor employé. When each lease was assigned (covering 314 Franklin street and 394 Broadway), an employé of Talcott asked Shute, the secretary and treasurer, for his set. Immediately upon receiving them he returned them asking him to carry the keys for Talcott. There is nothing to show that defendant or any one in his behalf was ever in the physical possession, custody, and control of any of the property of the company at its premises until just before the bankruptcy.

[3] It is absolutely essential to the validity of a factor's lien for advances that the property consigned shall be delivered by consignor to consignee. We cannot find upon this record that there was ever a change of possession, custody, and control from consignor or consignee.

I concur fully with Judge Holt's conclusion that this is "one of the innumerable schemes by which merchants have attempted to cre-

ate liens on their goods, which shall be·unknown to their creditors and shall not affect their credit, but which shall be enforceable if bankruptcy occurs. They are all based on the idea of giving notice enough to satisfy the law and not enough to inform the creditors."

A lien cannot be sustained on any theory of a mortgage. There was no mortgage in fact, nor was there any attempt to create one. Nor was there an attempt to create any lien other than a factor's lien on a consignment of merchandise for sale on commission. This attempt was made with such solicitude to conceal the facts from persons with whom the bankrupt was dealing on its own credit that it failed of accomplishment. We see no reason why the court should be astute to discover some equitable lien which the parties did not undertake to create. So much of the decree as covers the goods removed is affirmed.

[4] The accounts, or bills receivable for goods sold as described above, stand on a different footing. The contract in substance provided that certain of such accounts—those where advances had been made on the goods about to be sold—should pass to James Talcott. In all cases where the purchaser was notified by the invoice that he owed the money to Talcott, this was a complete assignment of that account. Judge Holt held that there is no satisfactory proof that defendant had reasonable cause to believe that a preference was intended before December 15, 1902. We see no reason to reverse such finding. Therefore as to all accounts, invoiced as above indicated prior to December 15, 1902, the transfer to defendant is not obnoxious to the provisions of the bankrupt act. So much of the decree therefore as requires defendant to account for these items should be reversed.

Several·points were raised upon the accounting, which are fully treated in Judge Hand's opinion. We concur in his conclusions and do not think it necessary to discuss them.

The decree is reversed, and cause remanded, with instructions to enter a new decree in conformity with this opinion. Since both sides appealed and each has prevailed in part only, there will be no costs of this appeal to either side.