E. A. LANGE MEDICAL COMPANY *v.* JOHNSON.

Opinion delivered October 22, 1917.

VENDOR AND PURCHASE—CONTRACT FOR SALE OF MEDICAL SUPPLIES TO BE RESOLD.—Contract between appellant and appellee held to constitute a sale of medical supplies to be resold by the appellee, and not to create the relation of principal and agent, and that appellee was liable for a failure to pay appellant for the goods delivered to him.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed.

*A. L. Barber* and *Silas W. Rogers,* for appellant.

1.   The contract was unambiguous and the goods were *sold* to Johnson outright.  The evidence is conclusive of a sale.   168 S. W. 290; 182 Mo. App. 140; 180 S. W. 21; 163 *Id.* 662; 115 Ark. 166; 124 *Id.* 539; 166 S. W. 162; 126 Ark. 597.

2.   The court erred in its instructions to the jury. Cases *supra.*

*Troy W. Lewis,* for appellees.

1.   The jury found that the contract was one of agency, and the evidence supports the verdict.   187 S. W. 653.  The contract was ambiguous.   4 Mass. 205.

2.   There is no error in the instructions.  No objections were made to any of the evidence.   There was only a question of fact, and the verdict settles it.   19 Fed. 405; 35 *Id.* 711; 36 *Id.* 657; 23 Ark. 50; 18 S. W. 172; 157 Fed. 656; 90 Ark. 23; 124 U. S. 510; 11 S. W. 518.   The verdict is conclusive on appeal.   17 Ark. 478, 385; 19 *Id.* 117; 51 *Id.* 495; 55 *Id.* 31; 89 *Id.* 534, and many others.

*H. C. Locklar,* for appellee Mitchell adopts the brief of appellees by *Troy W. Lewis.*

SMITH, J. This litigation arose out of a bond executed by appellees to guarantee the performance of the following contract:

"This agreement, made this 22d day of November, A. D. 1913, at De Pere, Wisconsin.

"Witnesseth, that whereas, James C. Johnson of Little Rock, Arkansas, desires to purchase of the A. E. Lange Medical Company of De Pere, Wisconsin, on credit and at salesman's wholesale prices, to sell again on his own account to consumers in the following territory, excepting the incorporated municipalities located therein, Pulaski County, State of Arkansas, its medicines, extracts, spices, soaps, toilet articles, perfumes, stock and poultry preparations and other articles furnished by it, paying his account for such goods in installments as hereafter provided.

"Therefore, he hereby agrees to sell no other articles than those sold him by said company and to have no other business or employment.

"He further agrees to pay said company for all articles purchased under this contract the current wholesale prices of such articles by remitting in cash each week to said company an amount equal to at least the wholesale prices of such goods as sold for cash and collected for by him, in accordance with the provisions of the weekly report blank of said company, and for that purpose as evidence of good faith he shall submit to said company complete itemized weekly reports of his business, provided, however, if he pays this account in full on or before the 15th day of said month he shall be allowed a discount of six per cent. (6%) from current wholesale prices.

"At its option the company shall also sell him on credit a wagon selected from its current catalogue of Lange's wagons and charge same to his account, less any cash payment he may make, at the regular time price quoted in catalogue, for which he agrees to pay within a reasonable time by making special remittance on his account.

"When the sale or purchase of articles under this contract shall be permanently discontinued for any reason or upon notice given by either party it is therefore terminated, and he further agrees to settle in cash within a reasonable time for balance due said company on account.

"The company further agrees to repurchase from him at termination of this contract and at salesman's wholesale prices then current, such of its articles as he has on hand and returned to them by freight prepaid to De Pere, Wisconsin, in as good salable condition as when originally sold him. Unless prevented by strikes, fires, accidents or causes beyond its control, said company agrees to fill and deliver on board cars at De Pere, Wisconsin, his reasonable orders; provided his account is in satisfactory condition, and to charge all articles sold him under this contract to his account at current salesman's wholesale prices, also to notify him promptly of any change in wholesale prices.

"The company further agrees to exchange new goods for all of its articles used to the trial mark only, also such other of its articles as said company may hereafter authorize, in writing to be placed on trial, same to be returned to them in compliance with such written authority, and by freight prepaid to De Pere, Wisconsin.

"The company further agrees to allow credit for all freight charges on its shipments going into the States of Wisconsin, Minnesota, Iowa, Illinois, Indiana, Michigan and Ohio, and to allow credit equal to one-half the freight charges on its shipments going into all other States, unless otherwise specified by said company, provided, that no shipment shall weigh less than one hundred pounds.

"The company also agrees to give salesman credit for all mail orders going from them into the said salesman's territory after first deducting salesman's wholesale price and expenses of delivering.

"Said company further agrees to furnish him free of charge at De Pere, Wisconsin, report blanks, order blanks, advance cards, printed return envelopes for his

use, also to furnish him free of charge after he has ordered goods, our monthly sales letter, selling suggestions and such other booklets and letters as they may issue from time to time as to the best methods of selling to consumers, such goods as purchased by him, but it is expressly agreed that nothing contained in such letters, books or suggestions and advice shall be construed as in any way modifying the terms of this contract.

"This contract is subject to acceptance at the home office of the company and is to continue in force as long as his account and the amount of his purchases remain satisfactory to said company, or until terminated as provided above; provided, however, that said James C. Johnson, or his guarantors, may be released from this contract at any time by paying in cash the balance due said company on account.

"E. A. Lange Medical Company,
"By R. C. French,
"President and Manager.
"James C. Johnson.
"Salesman sign here in ink or indelible pencil."

Pursuant to this contract, goods were shipped to Johnson, which have not been paid for, the amount of which is not questioned.

It was contended by appellant in the trial of the cause in the court below that the contract sued on was one for the sale of goods, while it was contended by appellees that the contract is so ambiguous that its true meaning could not be ascertained except when it is interpreted by the conduct of the parties in the performance of its provisions.

It was shown at the trial that the appellant company had from two hundred to seven hundred representatives throughout the country, and that appellee Johnson was required to make regular reports of the progress of his sales. One of these reports covered cash sales, another report was made on collections, and another of goods sold on credit, while a monthly report was made of the goods

on hand; and that the goods were sold at a price fixed by
appellant; and that Johnson made duplicate slips of every
sale, one of which was given to the purchaser, and the
other was kept by himself for use in making up his re-
ports; and he was allowed to sell his goods only in the
rural parts of Pulaski County, another salesman having
the exclusive right to sell in the cities of Little Rock and
Argenta; and that Johnson was encouraged to sell his
goods on credit, and that he did so, and was unable to
make collections, and that this failure to collect caused
him to fall behind in his accounts. The literature sent
out by appellant to Johnson promised him credit for all
mail orders received in his territory; but there appears to
have been no such orders. Johnson was furnished with a
book containing 109 pages of printed matter, consisting
principally of price lists. There was stamped on the fly-
leaf of the book this statement: "This book sold only to
Lange's salesmen. The price $5 charged will be credited
upon return of this book to us, regardless of its condition,
when the salesman discontinues as a Lange's agent." All
of this matter was introduced over the objection and ex-
ception of appellant. There was some other evidence, but
we have stated substantially the evidence which appellees
say show the relation between the parties to have been
that of principal and agent.

It was shown, and not denied, that appellant was a
foreign corporation, and had not complied with the laws
of this State permitting such corporations to do business
in this State.

The court submitted to the jury the question whether
the contract between appellant and Johnson was one cre-
ating the relation of vendor and vendee, or that of princi-
pal and agent.

The jury returned a verdict reciting a finding that
Johnson was the agent of appellant and that on that ac-
count they had found for appellees (defendants).

We have been called upon recently to construe sev-
eral contracts more or less similar to the one set out
above, and we have recognized each of these cases as pre-

senting a close question as to whether or not there was any such ambiguity as made it proper for the court to submit its interpretation to the jury. The first of these cases was that of *Clark* v. *Watkins Medical Co.*, 115 Ark. 166, where we held that the record presented a question for the jury, and reversed the judgment of the court directing a verdict for the medicine company upon the theory that the contract was one of bargain and sale, and not one creating the relation of principal and agent. We had the same contract before us in the case of *Watkins Medical Co.* v. *Williams,* 124 Ark. 539, and reaffirmed our opinion in the earlier case. We had a somewhat similar contract before us in the case of *Rawleigh Medical Co.* v. *Holcomb,* 126 Ark. 597, and we set out in the opinion in that case the conduct of the parties in the execution of its provisions, and announced our conclusion to be that the contract was one of bargain and sale, and not one creating the relation of principal and agent.

It appears from this record that Johnson, and other similar representatives, were sometimes designated in appellant's printed matter as agent, while at other times he was referred to as salesman; but we said in the opinions in the cases above cited that the mere designation of one as an agent did not make him such, and that one might sell his goods to whom he pleased, and might prescribe exactions in regard to the price to be charged and the manner of reselling without changing the character of the transaction as a sale.

We find in this record no evidence tending to show that the intention of the parties to the contract set out above was to create the relation of principal and agent which did not appear in the case of *Medicine Co.* v. *Holcombe, supra,* and this case must, therefore, be ruled by that rather than by the earlier cases cited above, and we hold, therefore, that the evidence set out above, though all of it be competent, does not create the relation of principal and agent when considered in connection with the written contract into which the parties had entered.

There was evidence on the part of one of the sureties that he had been induced to sign the bond by reason of fraudulent representations in regard to the character of the obligation he was assuming. This fraudulent representation is said to consist in the statement contained in a letter from the appellant company to Johnson, to the effect that the bond merely guaranteed Johnson's honesty and good faith. But the contention can not be sustained for two reasons. The first is, that the terms of the bond are plain and unambiguous, and no contention is made that the surety was prevented from reading the bond, or that he did not know what its provisions were when he signed it. The contention of the surety can not be sustained for the second reason that the alleged false representation is not, in fact, false. The sureties undertook to "guarantee, jointly and severally, the honest and faithful performance of the said contract." And it was not a faithful performance of the contract for Johnson to sell the goods to persons who would not pay for them. If the contract was one of bargain and sale—and we so hold—then Johnson had the right to sell the goods for cash or on credit, as the contract contained no stipulation to the contrary, but he alone could exercise a discretion as to whom credit should be extended, and it would not have been a faithful performance of the contract for Johnson to sell to any one who would not pay, for the purpose of increasing his profits if, perchance, the purchaser should pay, while, by so selling his wares, he was imposing upon the company the risk of loss if payment were not made.

We conclude, therefore, that the sureties are not exonerated from liability under the bond, and the judgment of the court below will be reversed and judgment will be entered here for $633.23, and interest, the amount sued **for.**