THE J. R. WATKINS MEDICAL COMPANY v. HOGUE.

Opinion delivered March 24, 1919.

1.  SALES—DISTINGUISHED FROM AGENCY.—Where a contract in plain terms created the relation of vendor and vendee, the court should have so declared as matter of law.

2.  PLEADING—JUDGMENT ON FACE OF PLEADINGS.—Where plaintiff sued on a contract which on its face created the relation of vendor and vendee, an answer which admitted the execution of the contract but claimed that the goods were furnished to the defendant as agent to sell for plaintiff states no defense, and judgment should have been entered for plaintiff.

Appeal from Saline Circuit Court; *W. H. Evans*, Judge; reversed.

STATEMENT OF FACTS.

This action was brought by the appellant against the appellees. The appellant is a Minnesota corporation, duly authorized to do business in the State of Arkansas. It alleged that it entered into a contract with Jinks S. Hogue by which it agreed to sell and deliver to the latter, f. o. b. cars, at any of its regular places of shipment, certain goods, extracts, and other articles manufactured and sold by it, at customary wholesale prices between January 29, 1915, and March 1, 1916; that Hogue agreed to pay for the goods so purchased, as specified in the terms of the written contract, and at the expiration of the period named therein to pay the entire sum remaining unpaid; that A. B. Cox and J. L. Smith, in consideration of $1 paid by the company and the execution of the contract, as sureties jointly and severally promised and guaranteed the full and complete payment for the said goods according to the terms of the contract; that there was due and unpaid by Hogue the sum of $731.26, for which it prayed judgment. The complaint was duly verified.

The appellant attached the copy of the contract, as an exhibit to its complaint, which is as follows:

"This agreement, made at Winona, Minnesota, U. S. A., this 29th day of January, A. D. 1915, between the J. R. Watkins Medical Company, a Minnesota corporation,

hereinafter called the company, party of the first part, and Jinks S. Hogue of Bauxite, Arkansas, party of the second part, witnesseth, that for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the company promises and agrees to sell and deliver to the party of the second part, free on board cars at Winona, Minnesota, or at its option, at any of its regular places of shipment any and all medicines, extracts and other articles manufactured or sold, or which may hereafter be manufactured or sold by it, unless prevented by fire, insurrection, invasion, strikes, or other cause, at the usual and customary wholesale prices, as the party of the second part may reasonably require for sale by him from time to time, from the date hereof, until the first day of March, 1916, as hereinafter provided, in the following described territory, excepting the incorporated municipalities therein located, to-wit:

"In the State of Arkansas: The part of Saline County lying southeast of the military road, including the townships of Fairplay and Liberty.

"In consideration of the sale and delivery to him f. o. b. cars at Winona, Minnesota, or other regular shipping point as above mentioned, by said company, of the medicines, extracts and other articles manufactured or sold by it, in such reasonable quantities as he may require for sale in said territory as herein provided, upon the terms herein expressed, the party of the second part promises and agrees as soon as practicable after said medicines, extracts and other articles are received, to make a thorough and personal canvass of said territory at least three times a year, at his own cost and expense, and to provide a good team and proper wagon and outfit therefor, and to sell said medicines, extracts and other articles, or so much thereof as possible, and at all times during said term, said party of the second part agrees to keep a complete record of all goods disposed of by him and on hand and to make to said company complete, regular, weekly written reports of all sales and collections

and also report the goods on hand and outstanding accounts when requested by said company so to do.

"And the party of the second part promises and agrees to pay to said company, at Winona, Minnesota, the wholesale prices aforesaid, for the medicines, extracts, and other articles sold to him from time to time, as herein provided, and the prepaid freight and express thereon, if any during said term, at the time and in the manner and in accordance with the provisions of the weekly report blanks of said company, to be furnished to the party of the second part, and at the termination of this agreement, to pay the whole amount therefor then remaining unpaid; or in cash, within ten days from date of invoice, with the understanding that said company will allow a discount of three per cent. from said wholesale prices on cash payments, provided full payment for all goods previously furnished shall then have been made; but such payments or any of them, may be extended by the said company without notice to the sureties herein and without prejudice to the rights or interests of said company, and if the party of the second part shall not pay cash for said medicines, extracts and other articles so sold and delivered to him, and if the payments at the time and in the manner and in accordance with said weekly report blanks, as aforesaid, are insufficient to pay therefor, said company may, in its discretion, thereafter either limit the sales herein agreed to be made, or discontinue the same until such indebtedness is paid or reduced as said company may require; and, at the termination of this agreement the party of the second part agrees to return by prepaid freight to said company, at Winona, Minnesota, or other point at which the same were delivered, in as good condition as when delivered to him f. o. b. cars, all of the said medicines, extracts and other goods, undisposed of by him, and the company agrees to receive such medicines and other goods, if the same are in such condition when received at Winona, Minnesota, or other point at which they were delivered to the party of the second part f. o. b. cars, and pay, or credit, the party of

the second part therefor at the same prices at which the same were sold and delivered to him, and if not in such condition when so received, the company shall make a reasonable charge for putting them in such condition, if that can reasonably be done, and deduct the same from the amount of the goods so returned, and pay or credit the party of the second part with the balance thereof, but no medicines, extracts or other goods left by said second party, with his customers, on time or trial, not paid for by them, or by them partially used and then returned to him, shall be returned to said company, or be paid for by it or credited to the account of said party of the second part.

"And it is mutually agreed between the parties hereto that the party of the second part shall pay all transportation charges of goods he so purchases and all expenses and obligations incurred in connection with the canvass of said territory and the sale of the goods therein, and shall have no power or authority to incur any debt, obligation or liability of any kind whatsover, in the name of, or for, or on account of said company, and that said company shall in no way contribute to the expense of, nor share in the profits or losses on the sales of said goods by said second party; nor have any interest in the accounts due for goods sold by the said second party; and no printed, advertising or other matter of said company sent to or distributed by said second party, shall be construed to change or modify the terms of this agreement; and that this is the complete, entire and only agreement between the said parties, and that it shall not be varied, changed or modified in any respect except in writing executed by the parties hereto. And it is further mutually agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice thereof in writing by mail and any sum then owing from said second party to said company shall thereupon be and become immediately due and payable."

The appellees answered and admitted the execution of the contract, and admitted that the amount claimed

was a true and correct statement of the account; but denied that the goods were sold to Hogue. They set up that the goods under the contract were furnished to Hogue as agent of the plaintiff company, and that same were to be sold and accounted for by Hogue, as agent. That immediately after the contract was executed, the plaintiff company abandoned the idea, if it ever entertained such, that the contract created the relation of vendor and vendee between it and Hogue, and by its conduct in carrying out the contract, as well as by the contract itself, the plaintiff company became the principal and Hogue its agent. The answer then specified the terms of the contract, upon which the defendants rely as creating the relation of principal and agent; and also set up that the plaintiff company had terminated the contract after Hogue, acting under the directions of the company, had sold large amounts of goods on credit for which he was not responsible; that the contract was entered into with the fraudulent intent to induce Hogue to place on credit and on trial as great an amount of goods as possible and then terminate the contract and compel the sureties to pay for the goods; that the contract was terminated by the plaintiff company at that season of the year when collections could have been made, and that Hogue had no opportunity to continue the business and make the collections. The answer was not verified.

At the trial, before any evidence was taken, the plaintiff company filed a motion for judgment on the pleadings; which motion was overruled, and the plaintiff company saved its proper exceptions.

Testimony was then introduced by the plaintiff and the defendants. At the conclusion of the testimony the plaintiff requested the court to instruct the jury to return a verdict in its favor, which the court refused.

The verdict and the judgment were in favor of the defendants, and this appeal followed.

*J. S. Utley,* Benton, Ark., and *Tawney, Smith & Tawney,* of Winona, Minn., for appellant.

1. The court should have construed the contract and declared as matter of law that there was a sale of the goods and the relation of vendor and vendee established and as the account was not disputed should have granted appellant's prayer for a directed verdict for the sum sued for. 112 Ark. 169; 115 *Id.* 171; 126 *Id.* 600; 131 *Id.* 15.

2. The evidence shows a sale to Hogue and judgment should have been rendered on the pleadings for the sum claimed. It was error not to direct a verdict for plaintiff. 131 Ark. 20; 179 S. W. 275; 112 *Id.* 169. Judgment should be entered here for appellant.

*J. C. Ross* and *Mehaffy, Reid, Donham & Mehaffy,* for appellees.

Appellant has failed to abstract the record and the judgment should be affirmed under Rule 9. 101 Ark. 20; 80 *Id.* 259; 81 *Id.* 237; 110 *Id.* 7; 57 *Id.* 441; 88 *Id.* 447; 104 *Id.* 641; 57 *Id.* 304, 441; 58 *Id.* 448; *Hubbert* v. *Ry. Co.,* Ark. Law Rep., Oct. 28, 1917.

WOOD, J., (after stating the facts). The contract sued on herein is very similar in much of its language to the contract sued on and set forth in *Clark* v. *J. R. Watkins Medical Co.,* 115 Ark. 166 (170-174). But it also differs in some very material respects from the language of that contract, and there is eliminated from the contract in the instant case the language which rendered the contract ambiguous in the case of *Clark* v. *J. R. Watkins Medical Co., supra.* Moreover, other language contained in the contract, here in suit, which was not in the contract in the above case, served to differentiate that case from the one at bar, and renders the contract in the present case free from ambiguity.

The court, therefore, erred in not construing the contract as one which created the relation of vendor and vendee. There is no language in the contract which would warrant the court in submitting this as an issue of fact to the jury. The contract being one which in

plain terms created the relation of vendor and vendee, the court should have so declared as a matter of law. The case is ruled on this point by the cases of *W. T. Rawleigh Medical Co.* v. *Holcomb*, 126 Ark. 597, and *Lange Medical Co.* v. *Johnson*, 131 Ark. 15.

Nor do we find that the allegations of the answer are sufficient to justify the conclusion that the parties to the contract, by their conduct, had abandoned the same, and entered upon a new and different contract which would relieve the appellee and his sureties from liability on the contract sued on.

It follows that the court erred upon the pleadings in not granting appellant's prayer for a directed verdict in its favor.

The judgment is, therefore, reversed and judgment will be entered here for the appellant in the sum of $731.26, as prayed for in its complaint.