GABINO BALASQUIDE, Plaintiff and Appellant, *v.* GUILHON & BARTHELEMY, Defendant and Appellee.

No. 8339.   Argued March 24, 1942.—Decided April 28, 1942.

*Eduardo Urrutia Martorell* for appellant.   *E. Martínez Rivera* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

In this case the essential facts as alleged in the complaint are as follows:

On December 6, 1938, the plaintiff contracted with the firm of Guilhon & Barthelemy, of Avignon, France, for the purchase through the agent and representative of said firm in Puerto Rico, Frank Crescioni, Jr., of machinery and accessories of a plant for the manufacture of mosaics which the plaintiff owns in the city of Ponce, Puerto Rico.

The alleged contract reads as follows:

> "Order No. 617.                 Date: December 6, 1938.
> "M_____Frank Crescioni, Jr., Santurce, P. R.
> Ship to_____Mosaicos Balasquide
> At_____Ponce, Puerto Rico
> How ship_____By steamer from France (Europe)
> Terms_____ With this order.   When_____ 4 weeks after date of this order.
> Salesman_____ Balance payable s/d against_____
> Buyer_____Bill of lading.
> Guilhon & Barthelemy.
> "2 Presses No. 5 (Guilhon & Barthelemy)
> "1 No. 34 Dup. Battery for 6 presses
> "1 Pump for 5 presses
> "5 Moulds 20 × 20 cm. parallel split
> "1 Sanitary Zacdo Mould 15 × 20 cm.
> "1 Track Mould 20 × 20 cm.
>                   "Value of equipment_____ $1,400
> "Note: The full price of this order is understood to be for delivery at the dock in Ponce, customs dues to be paid by the seller, the usual customs dues to be paid being 27½ per cent.
>                         "Mosaicos Balasquide.
>                             "(Sgd.) G. Balasquide.
> "Guilhon & Barthelemy,
> "By (Sgd.) Frank Crescioni, Jr., Seller."

On the same day and after signing the contract, the plaintiff and Crescioni called at the National City Bank of New York, Ponce Branch, and remitted by cable to the defendant the sum of $507 which was paid by Balasquide. In the cablegram sent to the defendant no explanation was given of the reason for the remittance, nor was any mention made of the name of the remitter; but on the same day Crescioni sent a cablegram to the defendant, as follows: ·

"Ship order 5,000 to Ponce immediate delivery promised ship first steamer sending me bills of lading direct will remit balance cable advise cable shipment machinery.—Crescioni."

On February 17, 1939, Crescioni advised the plaintiff that the machinery was in the San Juan Customhouse ready to be forwarded to Ponce, but that in order to withdraw said machinery from the customhouse it was necessary to get from the Chase National Bank, San Juan Branch, the bill of lading and the consular invoice by paying the draft held by said bank; that this required the delivery by Balasquide to him of a final payment of $793 as agreed upon, leaving a balance of $100 to cover the full amount of the transaction, to be paid after delivery to him of the machinery in Ponce to his satisfaction.

The plaintiff then came to San Juan, inspected the machinery, and delivered the money to Crescioni, who made out a receipt for $1,300 fully paid by Balasquide, and Crescioni promised to deliver the machinery to him. Said receipt reads as follows:

"Frank Crescioni,

"Broker, Santurce, P. R.

"Received from Dr. Lorenzo A. Balasquide the sum of One Thousand Three Hundred Dollars ($1,300) as the purchase price of the machinery ordered which shall be delivered in Ponce complete, and in accordance with order No 617 of December 6, 1938.

"Upon delivery of said machinery to the satisfaction of Mr. Balasquide the remaining balance of $100 of said order shall be delivered to me.

"San Juan, P. R., February 17, 1939.

"(Sgd.) Frank Crescioni, Jr.

"Frank Crescioni."

Crescioni having failed to deliver the machinery to Balasquide or to return the money, Balasquide brought an action against Guilhon & Barthelemy for breach of contract and alleged that that firm was liable for the acts of Mr. Crescioni, its agent and representative in Puerto Rico. He claimed the return of the sums paid by him to said agent with interest thereon at 6 per cent, and costs, expenses, and attorney's fees.

The defendant firm answered the complaint and specifically denied the facts alleged therein and pleaded as a special defense that there was a nonjoinder of parties defendant, inasmuch as it appeared from the complaint that the real party defendant should have been Mr. Frank Crescioni, Jr.

The case went to trial and the District Court of San Juan rendered judgment for the defendant, as from the evidence introduced it found that "Frank Crescioni, Jr., was not the agent and representative of defendant Guilhon & Barthelemy, but a direct purchaser with exclusive rights as such."

Feeling aggrieved by that judgment, the plaintiff took the present appeal, and in support thereof he urges that the judgment is contrary to law and against the evidence; that the court manifestly erred in weighing the evidence, resting its judgment on the facts regarding which there is an absolute lack of proof; and that the court also erred in holding that Crescioni was not the agent and representative of the defendant, but a direct purchaser with exclusive rights as such; and in finding that Crescioni could not, in any way, bind the defendant as regards the plaintiff.

What was the privity between Frank Crescioni and the defendant? Was Crescioni, as held by the lower court, a direct purchaser, with exclusive rights as such? Or was he a general agent representing Guilhon & Barthelemy, with power not only to sell, but also to receive the purchase price of the merchandise, as maintained by the plaintiff and appellant? In order to be able to answer those questions we have been compelled to make a careful examination of the whole evidence which covers 386 pages of the transcript of record. From the documentary evidence, the following appears:

On March 28, 1938, the defendant wrote a letter to Crescioni advising him that references about him had been furnished by the Chase National Bank, "and we advise you that we are willing to entrust you with our representation in Puerto Rico," and commissioned him to visit the mosaic factories of the Island.

On April 23, 1938, Crescioni acknowledged receipt of the letter of March 28 from Guilhon & Barthelemy and stated to the latter: "I gladly accept the exclusive agency of your machinery for Puerto Rico on the basis of a 10 per cent commission on the price list which you sent me in February of last year."

On July 12, 1938, the defendant wrote to Crescioni giving excuses for its failure to answer him sooner regarding his journey to Latin America, and saying: "We have only an agent in Perú. All the other countries are without any agent and you will oblige us by appointing agents for them. Get as many orders as possible during your trip."

In a letter dated September 27, 1938, the defendant, referring to a letter from Crescioni of August 27 of the same year, said: "We are agreeable to your request to forward you direct the bills of lading in the future, so as to save expenses on cartage and storage."

Two days afterward, on September 29, 1938, the defendant, in answer to the letter from Crescioni of the 12th of

the same month, said: "We are willing to give you as from this date our exclusive representation for the Island of Puerto Rico." At the foot of said letter are printed "General Sale and Draft Terms,". one of which conditions reads as follows: "Orders must be accompanied by fifty per cent of the amount thereof as a payment on account: for exportation the balance shall be paid against delivery of shipping documents. All our sales are effected under the above terms, . . . "

On November 15, 1938, in answer to a letter from Crescioni dated October 8, the defendant, after advising him regarding the suspension of certain shipments for failure to receive the payments on account, says: "We regret to be unable to draw against you at sight, because the bank does not discount our bills except when it has the papers in its possession and we are in need at this time of all our funds and we can not act in any other way than by discounting."

On December 1, 1938, five days before accepting the order of the plaintiff, Crescioni wrote to the defendant, saying:

"In order to avoid delays in withdrawing the merchandise and also to enable you to collect the balance on any order sent by me, I want to establish as a basis that both on such orders as are referred to by me in this letter and on any other that I may send to you, I will remit to you fifty per cent in advance and the balance will be remitted by cable and you will send me the shipping documents direct, because in this way I will receive the machinery, withdraw the same from the customhouse, and deliver it to the customer, will collect the full amount of the order and remit to you by cable immediately. This is the best way for our mutual benefit, and, therefore, will not accept any other terms."

On December 24, 1938, the defendant answered the foregoing proposal as follows: "Your suggestion regarding remittance to us of the balance of your order by cable is useless because this must be very expensive. We suppose that the best way to act would be as follows: 50 per cent as earnest

money and the balance against documents directly sent to Chase Bank.''

As may be seen from the foregoing, the defendant, in spite of the reiterated requests of Crescioni to alter the sale terms, insisted that 50 per cent of the amount of the sale be remitted to it with the order, the balance to be paid to the bank on delivery by the latter to the consignee of the bill of lading and other shipping documents.

According to the aforesaid correspondence, the custom followed by Guilhon & Barthelemy and Crescioni was as follows: Crescioni would send the order accompanied by a part of the purchase price. The factory would ship the goods consigned to Crescioni and would forward the invoice and the bill of lading to the bank for their delivery to Crescioni upon payment by the latter of the draft which was attached to the shipping documents. The title to the machinery continued in Guilhon & Barthelemy—subject of course to the claim of the bank which had discounted the draft—and would not pass to Crescioni until the latter had paid to the bank the amount of the draft. Once the draft was paid, the merchandise became the property of Crescioni, who from that moment could dispose of it as he saw fit.

In the case of *Standard Fashion Co.* v. *Magrane-Houston Co.*, 258 U.S. 346, 66 L. ed. 656, the plaintiff gave to the defendant the exclusive agency for the sale of its goods and agreed to sell to it said goods at a 50 per cent discount upon retail prices. The defendant promised to pay for the goods purchased by it and not to sell in its establishment goods similar to those of the plaintiff. In deciding the question of whether the contract between the parties was one of agency or one of sale, the Federal Supreme Court said:

"It is insisted by the petitioner that the contract is not one of sale, but is one of agency or joint venture, but an analysis of the contract shows that a sale was in fact intended and made. It is provided that patterns returned for exchange must have been purchased from the petitioner. Respondent agreed to purchase a certain num-

ber of patterns. . . . . Full title and dominion passed to the buyer. While this contract is denominated one of agency, it is perfectly apparent that it is one of sale. *Straus* v. *Victor Talking Machine Co.,* 243 U. S. 490.''

See *Arbucke* v. *Gates,* 30 S. E. 496; *De Kurf* v. *Elieman,* 89 N. W. 558; *Williams* v. *Drummond Tobacco Co.,* 44 S. W. 185; *Poirier Mfg. Co.* v. *Kitts,* 120 N. W. 558; 23 R.C.L. 1199, par. 14; *W. T. Raleigh Medical Co.* v. *Holcomb,* 191 S. W. 215; *E. A. Lange Medical Co.* v. *Johnson,* 197 S. W. 1168; *Hogg* v. *J. R. Watkins Medical Co.,* 228 S. W. 730; *Bessing* v. *Prince,* 198 P. 422; *Kellam* v. *Brown,* 17 S. E. 416; *Arbuckel Bros.* v. *Kirkpatrick & Co.,* 36 L.R.A. 285.

Could Frank Crescioni, under the special facts and circumstances of the case at bar, be considered as a sales agent or factor?

According to the decisions, a sales agent or factor is one who sells goods which another person has delivered to him for that purpose and receives compensation for the services by commission or otherwise. If the so-called ''sales agent'' buys and sells goods of another person on his own account, then he is not such sales agent. The essence of the sales agency is the delivery of the goods to the person who must sell the same, not as his own property, but as the property of his principal, who continues to own the goods and is entitled to control the sales, to fix prices and terms, and to demand and receive the purchase price less the agent's commission. 55 C. J. 1343; *Hendrickson* v. *International Harvester Co.,* 100 Vt. 161; *Ommen* v. *Talcott,* 188 F. 401; *Niles-Berment-Pond Co.* v. *Iron Molders, etc.,* 246 F. 851; *Hiner* v. *Olsen,* 72 P. (2d) 890; *Salisbury* v. *Brooks,* 94 S. E. 117; *Enc. Jur. Esp.,* vol. 2, p. 94.

In our opinion, the trial court did not err in holding that Crescioni was not a sales agent of the defendant partnership. The latter never delivered machinery to Crescioni without the latter first paying the purchase price thereof in the manner agreed upon. In the case at bar, the plaintiff

can not allege ignorance of the terms and conditions under which Guilhon and Barthelemy used to sell to Crescioni. He knew that it was a necessary condition to remit to said firm, together with the order, a certain sum on account of the purchase price. In compliance with this condition, he personally delivered to the bank—not to Crescioni—the sum of $507 to be remitted to Guilhon & Barthelemy as payment on account of the sum of $1,400 which was the amount of the order given by him to Crescioni. The plaintiff was aware that the defendant firm had not trusted Crescioni to the extent of delivering machinery to him without a previous payment of the price, inasmuch as one of the express terms of the order was that the balance of the $1,400 should be covered by paying the draft sent to the bank together with the shipping documents. Moreover, as alleged in the complaint and established by the evidence, Crescioni himself advised the plaintiff that the machinery was on the dock at San Juan and that in order to withdraw the same and acquire possession and ownership thereof it would be necessary first to pay to the Chase National Bank the amount of the draft and to get the shipping documents. This was sufficient notice to the plaintiff that the manufacturing concern would retain the title to and ownership of the machinery until the purchase price thereof had been fully paid; that such title and such ownership could not pass to Crescioni, nor to anyone else until payment was effected of the amount of the draft held by the bank; and that Guilhon & Barthelemy had designated the bank—and not Crescioni—as its agent for the collection and receipt of the amount of the draft covering balance of the price of the machinery.

The plaintiff, with knowledge of all the above facts, came to San Juan, examined the machinery, found it satisfactory, and delivered to Crescioni $793, retaining $100 as the value of some weights which were not found in the customhouse. Under such circumstances, payment was effected by the plain-

tiff fully at his own risk, for we fail to find in the whole evidence a single fact or circumstance which would justify us in holding that Guilhon & Barthelemy led the plaintiff to believe that they had authorized Crescioni to receive the purchase price of the machinery, without delivering the latter at the same time, or to take possession of the machinery in the customhouse without first paying to the bank the amount of the draft.

The plaintiff should and could easily have protected himself by paying to the bank the amount of the draft drawn on Crescioni and requiring the latter to endorse him the documents evidencing the right to get possession of the machinery. Why did he not do so? The answer was supplied by the plaintiff himself in his testimony when cross-examined during the trial, from which we transcribe as follows:

"Q. At the time you purchased the machinery in this case, what were the terms of payment agreed upon by you?

"A. Those stipulated between us two. A cash payment on account.

"Q. What percentage?

"A. I do not remember how much, but it was remitted through the National City Bank, *and the balance to be paid on my receiving the machinery.*

"* * * * * * *

"Q. Then, were you to pay for the machinery upon delivery to you of the documents or upon delivery of the machinery?

"A. I would have to deliver the money to the agent of the firm for him to get the bills of lading. *It was a matter of delicacy on my part, as I had to be away from San Juan.*"

The defendant took all the necessary and customary precautions to protect itself against a possible fraud. If the plaintiff, simply by reason of delicacy did not think it necessary to take similar precautions, he, and not the defendant, must suffer the consequences of his excessive trust.

The judgment appealed from must be affirmed.