GABINO BALASQUIDE, demandante y apelante, *v.* GUILHON & BARTHELEMY, demandada y apelada.

Núm. 8339.—*Sometido:* Marzo 24, 1942. *Resuelto:* Abril 28, 1942.

342

*Eduardo Urrutia Martorell,* abogado del apelante; *E. Martínez Rivera,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos esenciales alegados en la demanda son como sigue:

En diciembre 6 de 1938, el demandante celebró un contrato de compraventa con la firma de Guilhon & Barthelemy de Avignon, Francia, a través del agente y representante de dicha firma en Puerto Rico, Frank Crescioni, Jr., para la entrega de un equipo de maquinaria y piezas o accesorios para la fábrica de mosaicos que el demandante tiene establecida en la ciudad de Ponce, Puerto Rico.

El alegado contrato lee así:

"Order No. 617.        Date: Diciembre 6, 1938
M____ Frank Crescioni, Jr., Santurce, P. R.
Ship to_____Mosaicos Balasquide
At_____Ponce, Puerto Rico
How Ship_____By Steamer from France (Europe)
Terms_____Con esta orden.   When_____4 weeks after date of
    this order.

Salesman_____Balance pagadero g/v contra_____

Buyer_____Conocimiento embarque.

Guilhon & Barthelemy.

  "2 Prensas No. 5 (Guilhon & Barthelemy)

  "1 Acumulador No. 34 Bis. para 6 prensas

  "1 Bomba para 5 prensas

  "5 Moldes 20 $\times$ 20 cm. a desgarre paralelo

  "1 Molde Zacdo Sanitario 15 $\times$ 20 cm.

  "1 Molde Huella 20 $\times$ 20 cm.

   "Valor de este equipo_____$1,400

"Nota: El valor total de esta orden se entiende puesto en el muelle de Ponce y los derechos de Aduana son pagaderos por el vendedor, siendo el tipo de arancel pagado el usual del 27½ por ciento.

        "Mosaicos Balasquide,
         (Fdo.)   G. Balasquide.

"Guilhon & Barthelemy,

"Por (Fdo.) Frank Crescioni, Jr., Vendedor."

En la misma fecha, después de haberse firmado el contrato, el demandante y Crescioni fueron al National City Bank of New York, Sucursal de Ponce, y giraron por cable a la demandada la cantidad de $507 que fueron pagados por Balasquide. En el cablegrama enviádole no se explicaba a la demandada el motivo de dicha remesa, ni quien la hacía, pero el mismo día Crescioni le envió un cablegrama diciéndole:

"Consignen orden 5000 a Ponce compromiso entrega inmediata embarquen primer vapor enviándome documentos embarque directos remesaré balance cable cableen salida máquinas—Crescioni."

En 17 de febrero de 1939, Crescioni informó al demandante que las maquinarias se encontraban en la Aduana de San Juan, listas para ser enviadas a Ponce, pero que para poder levantar las mismas se hacía necesario obtener del Chase National Bank, Sucursal de San Juan, el conocimiento de embarque y factura consular y pagar el giro que obraba en poder de dicho Banco, por lo cual era necesario que Balasquide le entregara $793 como pago final a que venía obli-

gado, dejando pendiente un balance de $100 para cubrir el importe total de la operación efectuada, pagadero al entregársele las maquinarias en Ponce, a su satisfacción.

El demandante vino entonces a San Juan, inspeccionó la maquinaria y le entregó el dinero a Crescioni, quien le extendió un recibo por los $1,300 pagados por Balasquide en total, prometiendo Crescioni entregarle la maquinaria. El recibo lee como sigue:

"Frank Crescioni,
Broker, Santurce, P. R.

"He recibido del Dr. Lorenzo A. Balasquide la cantidad de Mil Trescientos Dólares ($1,300) importe de la maquinaria ordenada y la cual será entregada en Ponce completa y de acuerdo con la orden número 617 de fecha 6 de diciembre de 1938.

"Una vez que dicha maquinaria sea entregada a satisfacción del Sr. Balasquide se me entregará los CIEN DÓLARES ($100.00) restantes de dicha orden.

"San Juan, P. R., a 17 de febrero de 1939.

"(Fdo.) Frank Crescioni, Jr.
"Frank Crescioni."

Habiendo dejado Crescioni de entregar a Balasquide la maquinaria, y negádose a devolver el dinero, Balasquide radicó demanda contra Guilhon & Barthelemy por incumplimiento de contrato, alegando que dicha firma es responsable de los actos de su agente y representante en Puerto Rico, Sr. Crescioni, y reclamando la devolución de las cantidades pagadas por él a dicho agente más los intereses al 6 por ciento y las costas, gastos y honorarios de abogado.

La firma demandada contestó la demanda negando específicamente los hechos alegados en la misma y como defensa especial alegó que existía defecto de parte demandada, ya que de la demanda aparece que la propia parte demandada debió ser el Sr. Frank Crescioni, Jr.

Fué el caso a juicio y la Corte de Distrito de San Juan dictó sentencia declarando sin lugar la demanda por encontrar que, de acuerdo con la prueba presentada, "Frank Cres-

cioni, Jr., no era agente y representante de la demandada Guilhon & Barthelemy, y sí un comprador directo con derechos exclusivos como tal.''

No conforme con la sentencia dictada, el demandante entabló el presente recurso de apelación y para sostenerlo alega que la sentencia es contraria a la evidencia y a derecho; que la corte cometió manifiesto error en la apreciación de la evidencia, basando su sentencia en hechos respecto de los cuales hay ausencia absoluta de pruebas; y que la corte erró también al resolver que Crescioni no era agente y representante de la demandada y sí un comprador directo con derechos exclusivos como tal; y al declarar que Crescioni no podía en forma alguna obligar a la demandada con respecto al demandante.

¿Cuál era la relación existente entre Frank Crescioni y la demandada? ¿Era Crescioni, como sostuvo la corte inferior, un comprador directo, con derechos exclusivos como tal? ¿O era un agente general representante de Guilhon & Barthelemy, con facultad no sólo para vender si que también para recibir el precio de la mercancía, como sostiene el demandante apelante? Para poder contestar estas preguntas nos hemos visto obligados a hacer un cuidadoso estudio de toda la evidencia, cuya transcripción ocupa 386 páginas del récord. De la prueba documental resulta:

En marzo 28, 1938, la demandada dirigió una carta a Crescioni en la que le decía que había recibido informes sobre él del Chase National Bank, ''y le informamos que estamos dispuestos a confiarle nuestra representación para Puerto Rico'', encargándole que visitara las fábricas de losas de la isla.

En abril 23, 1938, Crescioni acusó recibo de la carta de marzo 28 de Guilhon & Barthelemy y les decía: ''Acepto con gusto la agencia exclusiva de sus maquinarias para Puerto Rico a base de 10 por ciento de comisión sobre la lista de precios que ustedes me enviaron en febrero próximo pasado.''

En julio 12, 1938, la demandada escribe a Crescioni excusándose por no haberle contestado antes con respecto a su viaje a la América Latina y diciéndole: "Sólo tenemos un representante en el Perú. Todos los otros países están vacantes y le agradeceremos si usted puede dejar en ellos representantes. Tome el mayor número posible de órdenes durante ese viaje."

Por carta de septiembre 27 de 1938, la demandada, en contestación a carta de Crescioni de agosto 27 del mismo año, le decía: "Estamos de acuerdo con usted para dirigirle directamente los conocimientos de embarques en el futuro, de manera de evitar gastos de acarreto y almacenaje."

Dos días más tarde, en septiembre 29, 1938, la demandada, contestando la carta de Crescioni del 12 del mismo mes, le dice: "Estamos de acuerdo con usted en darle a partir de esta fecha nuestra representación exclusiva para la Isla de Puerto Rico." Al pie de dicha carta aparecen insertas las "Condiciones Generales de Venta y de Giros", una de las cuales dice así: "Las órdenes deberán ser acompañadas por la mitad de su montante como pago a cuenta: para la exportación el saldo será pagado contra remesa de los documentos de embarque. Todas nuestras ventas son consumadas bajo las condiciones arriba expresadas, . . .".

En noviembre 15 de 1938, en contestación a una carta de Crescioni de 8 de octubre, la demandada, después de informarle acerca de la suspensión de ciertos embarques por no haber recibido los pagos a cuenta, le dice: "Sentimos no poder girar contra usted a la vista, porque el Banco no nos descuenta nuestro papel más que cuando él tiene los documentos en sus manos y a la hora actual nosotros tenemos necesidad de todos nuestros capitales y no podemos proceder de ningún otro modo que por descuento."

En diciembre 1°., 1938, cinco días antes de tomar la orden del demandante, Crescioni se dirigió a la demandada, diciéndole:

"Para evitar tanto tardanzas en el levante de la mercancía como también en que Uds. cobren el balance de cualquier pedido que yo les haga quiero establecer como base que tanto estos pedidos a que me refiero en esta carta como cualquiera otro que yo les haga, les remesaré el 50 por ciento de anticipo y el balance les remesaré por cable y Uds. me envían los documentos de embarques directos, pues de esta manera yo recibo la maquinaria, la levanto de la Aduana y la entrego al cliente, cobro el total de la orden y los remeso por cable inmediatamente. Esta es la mejor manera para el beneficio mutuo, por lo tanto no aceptaría otras condiciones."

La demandada contestó a la anterior proposición en diciembre 24, 1938, en la forma siguiente: "Inútil como usted dice de enviarnos el saldo de sus órdenes por cable porque eso debe ser muy caro. Suponemos que la mejor manera de proceder será: 50 por ciento a título de arras, saldo contra envío directo de los documentos al Chase Bank."

Como se ve por lo expuesto, la demandada, no obstante las repetidas súplicas de Crescioni para que se variasen las condiciones de las ventas, insistió en que se le pagase el 50 por ciento del montante de la orden junto con ésta, debiendo pagarse el balance al Banco al entregar éste al consignatario el conocimiento y demás documentos de embarque.

De acuerdo con la anterior correspondencia, la práctica seguida por Guilhon & Barthelemy y Crescioni fué la siguiente: Crescioni enviaba las órdenes acompañadas de una parte del precio. La casa fabricante embarcaba la mercancía consignada a Crescioni y enviaba la factura y el conocimiento al Banco para ser entregados a Crescioni cuando éste pagase el giro, que venía unido a los documentos de embarque. El título sobre la maquinaria continuaba siendo de Guilhon & Barthelemy—sujeto desde luego a la reclamación del Banco que había descontado el giro—y no pasaba a Crescioni hasta el momento en que éste pagaba al Banco el importe del giro. Una vez pagado el giro, la mercancía pasaba a ser propiedad de Crescioni, quien desde ese momento podía disponer de ella como mejor le conviniese.

En el caso de *Standard Fashion Co.* v. *Magrane-Houston Co.*, 258 U. S. 346, 66 L. ed. 653, la demandante concedió a la demandada una agencia exclusiva para la venta de sus productos y convino en venderle dichos productos con un 50 por ciento de descuento sobre los precios de detalle. La demandada se comprometió a pagar por los productos que comprase y a no vender en su establecimiento productos similares a los de la demandante. Al resolver la cuestión sobre si el contrato entre las partes era uno de "Agencia" o uno de "Compraventa", la Corte Suprema Federal se expresó así:

"La peticionaria insiste en que el contrato no es uno de venta y sí uno de agencia o aventura en común; pero un análisis del contrato demuestra que lo que en realidad se intentó hacer y se hizo fué una venta. Se estipula que los modelos (patterns) devueltos para ser cambiados deberán haber sido comprados a la peticionaria. La demandada convino en comprar un determinado número de modelos. . . El pleno título y el dominio pasaron al comprador. Aún cuando este contrato ha sido denominado como 'Agencia', es perfectamente aparente que se trata de un contrato de venta. *Strauss* v. *Victor Talking Machine Co.*, 243 U. S. 490, 61 L. ed. 866."

Véanse: *Arbucke* v. *Gates*, 30 S. E. 496; *De Kurf* v. *Elicman*, 89 N. W. 558; *Williams* v. *Drummond Tobacco Co.*, 44 S. W. 185; *Poirier Mfg. Co.* v. *Kitts*, 120 N. W. 558; 23 R. C.L. pág. 1199 párr. 14; *W. T. Rawleigh Medical Co.* v. *Holcomb*, 191 S. W. 215; *E. A. Lange Medical Co.* v. *Johnson*, 197 S. W. 1168; *Hogg* v. *J. R. Watkins Medical Co.*, 228 S. W. 730; *Bessing* v. *Prince*, 198 P. 422; *Kellam* v. *Brown*, 17 S. E. 416; *Arbuckle Bros.* v. *Kirkpatrick & Co.*, 36 L.R.A. 285.

¿Podría Frank Crescioni, dentro de los hechos y circunstancias especiales del caso de autos, ser considerado como un agente representante (sales agent) o factor de comercio?

De acuerdo con la jurisprudencia, agente representante, "sales agent" o factor de comercio es aquel que vende artículos que otra persona le ha entregado con ese propósito y

que recibe compensación por sus servicios en forma de comisión o en cualquiera otra forma. Si el llamado "agente" compra y vende las mercancías de otro por su propia cuenta, en ese caso no es tal agente. La esencia del contrato de agencia para vender es la entrega de la mercancía a la persona que ha de venderla, no como su propiedad sino como propiedad del principal, quien continúa siendo dueño y tiene el derecho de controlar las ventas, fijar precios y condiciones y exigir y recibir el precio de la venta menos la comisión del agente. 55 C. J. 1343; *Hendrickson* v. *International Harvester Co.*, 100 Vt. 161; *Ommen* v. *Talcott*, 188 F. 401; *Niles-Berment-Pond Co.* v. *Iron Molders, etc.*, 246 F. 851; *Hiner* v. *Olsen*, 72 P. (2d) 890; *Salisbury* v. *Brooks*, 94 S. E. 117; Enc. Jur. Esp., Vol. 2, pág. 94.

A nuestro juicio la corte sentenciadora no erró al sostener que Crescioni no era un agente representante de la sociedad demandada. Ésta nunca entregó sus maquinarias a Crescioni sin que éste hubiese pagado primeramente el precio de las mismas en la forma convenida. En el caso de autos, el demandante no puede alegar ignorancia de los términos y condiciones bajo los cuales Guilhon & Barthelemy hacían sus ventas a Crescioni. Él sabía que era necesario enviar a dicha firma junto con la orden una cantidad a cuenta del precio convenido. Y en cumplimiento de esa condición, él personalmente entregó al Banco—y no a Crescioni—la suma de $507 para ser remesada a Guilhon & Barthelemy, como pago a cuenta de los $1,400 a que ascendía la orden dada por él a Crescioni. El demandante sabía que la firma demandada no había confiado en Crescioni hasta el punto de entregarle las maquinarias sin el previo pago, pues una de las condiciones expresas de la orden era que el balance o saldo de los $1,400 se pagaría haciendo efectivo el giro que se enviaría al Banco junto con los documentos de embarque. Además, según se alega en la demanda y resulta de la prueba, el propio Crescioni avisó al demandante que las maquinarias

estaban en el muelle en San Juan y que para levantarlas y adquirir la posesión y dominio de ellas era necesario acudir primero al Chase National Bank para hacer efectivo el giro y obtener los documentos de embarque. Eso era suficiente para informar al demandante que la casa manufacturera retenía el título y el dominio sobre las maquinarias hasta que el precio de las mismas fuese totalmente pagado; que ese título y ese dominio no podían pasar a Crescioni, ni a ninguna otra persona, mientras no se hiciese efectivo el giro en poder del Banco; y que Guilhon & Barthelemy habían designado al Banco— y no a Crescioni—como su agente para cobrar y recibir el importe del giro por el saldo del precio de las maquinarias.

Conociendo todas las circunstancias que acabamos de exponer, el demandante vino a San Juan, examinó las maquinarias, las encontró conformes y entregó a Crescioni $793, dejando $100 pendientes de pago, como valor de unas pesas que no aparecieron en la Aduana. El pago bajo tales circunstancias fué hecho por el demandante a su entero riesgo, pues no encontramos en toda la evidencia ni un solo hecho o circunstancia que nos autorice a sostener que Guilhon & Barthelemy indujeran al demandante a creer que ellos habían autorizado a Crescioni para recibir el pago de las maquinarias, sin entregarlas al mismo tiempo o para tomar posesión de las maquinarias en la Aduana sin antes hacer efectivo el giro en poder del Banco.

El demandante debió y pudo protegerse fácilmente haciendo efectivo al Banco el importe del giro contra Crescioni y exigiendo a éste que le endosara los documentos acreditativos del derecho a tomar posesión de las maquinarias. ¿Por qué no lo hizo así? La contestación la dió el propio demandante en su testimonio al ser repreguntado en el acto de la vista, del cual copiamos lo que sigue:

"P.—Cuando Ud. compró esa maquinaria en este caso ¿cuáles fueron las condiciones de pago que Ud. convino?

R.—Las que se estipularon entre nosotros dos. Un tanto por ciento de pronto.

P.—¿Qué por ciento?

R.—No recuerdo la cantidad y se mandó por conducto del National City Bank *y el resto al recibir la maquinaria yo.*

P.—¿Entonces Ud. tenía que pagar la maquinaria al momento de entregársele los documentos o al momento de entregársele la maquinaria?

R.—Yo entregarle el dinero al representante de la casa para que él sacara los conocimientos de embarque. *Era una cuestión de gentileza de mi parte como yo no podía estar en San Juan."*

La demandada tomó todas las precauciones necesarias y usuales para protegerse contra un posible fraude. Si el demandante, por pura gentileza, no creyó necesario tomar idénticas precauciones, es él y no la demandada quien debe sufrir las consecuencias de su exceso de confianza.

*La sentencia apelada debe ser confirmada.*