G. D. MALCOLM, *Admr.*, v. AMERICAN SERVICE COMPANY *et al.*

(No. 8523)

Submitted April 13, 1937. Decided May 18, 1937.

*Harriet L. French,* for plaintiffs in error.
*Ajax T. Smith* and *W. H. Malcolm,* for defendant in error.

KENNA, PRESIDENT:

To a judgment for $10,000.00 rendered on the tenth day of July, 1936, in the Circuit Court of Mercer County in favor of G. D. Malcolm, administrator of the estate of Walter Malcolm, deceased, in an action for death by wrongful act, American Service Company, E. B. Clark and Howard Johnson prosecute this writ of error.

The assignments of error hinge upon three questions of law that arise upon the record: (1) That the proof fails to show negligence such as will sustain a verdict against any of the defendants; (2) that supposing the record is sufficient to sustain a verdict against the defendants, the record shows affirmatively that the plaintiff's decedent was guilty of contributory negligence as a matter of law; and (3) that in any event, under the evidence no legal relationship is shown to have existed between the American Service Company and the driver of the truck at the time of the injury as will justify the verdict against that company.

Plaintiff's decedent came to his death in August, 1935, in the wreck of a truck upon the highway between Beckley and Princeton. The truck was a two-ton GMC

being driven by Banner Johnson. It was used to deliver ice upon a route operated from Princeton, and on the occasion of the wreck was returning to Princeton empty. Throughout the record positions are described and distances are estimated very largely by the use of local names, and, since there is no plat or diagram accompanying the record, it is very difficult to get from it a concrete notion of the scene of the accident and of just what did in fact take place. From the plaintiff's standpoint, however, we believe that the following may be stated as the facts upon which the jury's verdict was based, of course, without mentioning the defendant's evidence in conflict with it.

Banner Johnson had been driving the truck in question for about two months over the same route, and plaintiff's decedent had for about six weeks of that time been in the habit of going with Johnson on his trips. Malcolm went along simply for the pleasure of the ride and perhaps furnished Johnson some incidental help in his work. In coming down a long hill about four miles out of Princeton, the truck failed to negotiate an abrupt curve at the bottom of the hill, its right wheels went off the road onto the berm at the right while in the curve and, while running partly on and partly off the pavement, it struck the side of a concrete bridge from two to three hundred feet beyond the curve. The chassis of the truck stayed on the road and the body pitched to the right beyond the concrete rail of the bridge. The truck tore out a large piece of concrete from the bridge rail and made a gash about an inch wide for a distance of six or seven feet inside and along the remaining concrete of the bridge rail. Malcolm was killed in the wreck. Plaintiff's evidence is to the effect that the truck gained speed all the way down the hill, running "like it was either kicked out of gear or had no brakes." Its speed was estimated by plaintiff's witnesses at from forty-five to sixty miles an hour at the bottom or the hill. Johnson and Malcolm were both familiar with the road, with the location of this hill, and the curve and the bridge beyond. The truck had for several days been "shimmy-

ing" when driven over rough ground, and Malcolm had been in it upon one or two occasions when this had occurred.

Plaintiff's declaration alleges that the negligence of the defendants consisted in operating the truck without proper brakes, in driving it at a dangerous rate of speed, in failing to keep a proper lookout, and in allowing the truck to get out of the control of the driver. If the jury gave credence to the testimony of plaintiff's witnesses (and, of course, upon this review we cannot assume that it did not), then, among other things, it could have reached the conclusion that the truck was being operated down this hill at a momentum which was steadily increasing until it was obliged to round a curve at the bottom at a speed of sixty miles an hour; that in doing so the driver was obliged to drive it off onto the berm of the road at the right and could not regain the road before the truck, without perceptible reduction of its speed, crashed into the bridge some two or three hundred feet beyond the curve. That the jury might regard such conduct on the part of the driver of the truck as constituting a failure to exercise such care as an ordinarily careful and prudent person would have exercised under the circumstances seems to be quite clear.

Nor do we believe that we would be justified in finding as a matter of law that the contributory negligence of plaintiff's decedent is established in this record. It is true that he was accustomed to riding on the truck with Johnson and that he was familiar with the road and with Johnson's ordinary method of driving. It is true also that Johnson testified that plaintiff's decedent did not protest about the method of his coming down the hill and around the curve. It is also true that Johnson stated that he drove down the hill and around the curve as he usually did and at a speed of approximately thirty miles an hour. Johnson testified that he was driving thirty miles an hour and that would be the speed that plaintiff's decedent would expect at that point. On the other hand, there is proof that on this occasion the truck was being driven at a speed of sixty miles an hour.

What credence the jury gave to Johnson's testimony in the light of the testimony of plaintiff's witnesses concerning speed and his manner of driving, we cannot tell. Neither can we tell whether, under all the facts and circumstances of the case, plaintiff's decedent had an opportunity to protest against Johnson's driving after that duty devolved upon him. Under this proof it is difficult to tell at just what time the realization of danger should have come to a person riding in the truck, and it is likewise difficult to say that at that time a protest from plaintiff's decedent might not have been the very worst thing that he could have done. The inferences to be drawn and the conclusions to be reached on a question of this sort, under conflicting testimony, fall clearly within the proper realm of the jury. Nothing respecting them is so outstandingly clear in this record as to make them matters of law for the court.

As distinguished from the questions of negligence and of contributory negligence, we believe from this record that the liability of the American Service Company was a matter of law for the court. This question turns primarily upon the construction of a written contract. On May 10, 1935, American Service Company as party of the first part and Clark and Johnson as parties of the second part entered into an agreement in writing which was introduced in evidence with the exception of parts that dealt with indemnity insurance. We believe that this contract amounted to no more than a contract for the sale of ice from the American Service Company to Ernest Clark and W. H. Johnson. The contract recites that the American Service Company is engaged in the manufacture of ice in the City of Princeton and elsewhere, and that it desires to arrange with the parties of the second part (Ernest Clark and W. H. Johnson) to sell and distribute ice manufactured by it in a named territory. The American Service Company agrees to sell to Clark and Johnson during a period of two years all the ice they may require for sale in the territory named at five dollars per ton of two thousand ponds, to be paid for in cash upon delivery at the platform of the

American Service Company, and Clark and Johnson agree that they will buy ice from no one else during the stated period. The American Service Company agrees to sell Clark and Johnson three trucks for $175.00, the purchase price to be paid at the rate of thirty cents per ton from all ice delivered to Clark and Johnson, the American Service Company retaining title to the trucks until the payment shall be completed. Clark and Johnson covenant to advance the interests of the ice company and to preserve its good name and good will in the territory to be served by them, and to render good service to present and new patrons in said territory, such service on their part to be satisfactory to the ice company. It is stipulated that if, in the opinion of the ice company, Clark and Johnson violate any of the conditions of the contract by buying ice from anyone else or subletting or assigning any part of the contract or otherwise, or if they "do not render satisfactory service to the patrons of the company," the ice company shall have power to terminate the contract. The contract contains no stipulation that gives the ice company control over Clark and Johnson or over any of their employees in the execution of the contract. The control that is given to the ice company by virtue of the power vested in it to terminate the contract if it is not being satisfactorily executed by Clark and Johnson, is nothing more than the control that any manufacturer may legitimately impose in the sale of its goods to a distributor or retail dealer who buys them for re-sale. Such conditions do not create a relationship of principal and agent. They are such conditions as may be imposed upon the purchaser of goods as well as upon an agent and furnish no conclusive guide in determining what the relationship established by the contract in fact is. That relationship must be arrived at by considering the entire contract. *Salisbury* v. *Brooks*, 81 W. Va. 233, 94 S. E. 117; *Piper* v. *Oakland Motor Co.*, 94 Vt. 211, 109 A. 911; *Poirier Mfg. Co.* v. *Kitts*, 18 N. D. 556, 120 N. W. 558; *E. A. Lange Medical Co.* v. *Johnson*, 131 Ark. 15, 197 S. W. 1168; *Clark* v. *J. R. Watkins Medical Co.*, 115 Ark. 166, 171 S. W. 136.

But defendant in error insists that the manner of carrying out the contract as between the American Service Company on the one hand, and Clark and Johnson on the other, has served to constitute the latter the agent of the former, so that the American Service Company would be bound to respond in an action for the negligence of Clark and Johnson. They point out that the license to the truck involved in the accident remained in the name of American Service Company in spite of its sale to Clark and Johnson under the contract of May 10th; that the orders for ice to be delivered by Clark and Johnson were phoned to the plant of the American Service Company; that the trucks of Clark and Johnson were kept there and that repair work was done upon them at the garage of the American Service Company.

In so far as the license of the truck being in the name of the ice company is concerned, that fact constitutes no more than a circumstance indicating ownership, and the fact of ownership itself, if definitely established, would do no more than raise a rebuttable presumption that the truck, at the time of the accident, was being operated on behalf of the owner. *Ercole* v. *Daniel,* 105 W. Va. 118, 141 S. E. 631; *Shahan* v. *Jones,* 115 W. Va. 749, 751, 177 S. E. 774; *Judson* v. *Bee Hive Auto Service Co.,* 136 Ore. 1, 297 P. 1050, 74 A. L. R. 944, and note at page 951. The proof here shows that the driver of the truck was employed, controlled and paid by Clark and Johnson. We think that it is comparatively clear that the contract of May 10th operated as a contract of outright sale of these trucks as between the American Service Company and Clark and Johnson. But if it did not, we feel that we would still be obliged to hold that it amounts in any case to a contract of hiring or of rental of the trucks. The contract certainly makes it clear that they are not to be used in the business of the American Service Company, but that they are to be used in the business of Clark and Johnson. The contract places no restriction upon the use of the trucks by Clark and Johnson, and the proof shows that they were used for other purposes as well as for the delivery of ice.

In the circumstance that orders intended for Clark and Johnson were phoned to the plant of the ice company and that the trucks of Clark and Johnson were repaired at its garage, we see nothing that would cause us to say that the contract of May 10th was given a different effect by the parties thereto than the plain words of the contract contemplated. We are of the opinion that the written contract fixes the relationship between the American Service Company and Clark and Johnson. The contract is not ambiguous and the construction placed upon it by the conduct of the parties in carrying it out does not conflict with its terms. There is nothing in this record tending to show that it was carried out in bad faith and that the American Service Company did not intend it as a contract of sale. On the contrary, there is not the slightest proof that the American Service Company, contrary to the provisions of the contract, exercised the least control over the manner in which Clark and Johnson carried it out. The driver of the truck, Banner Johnson, was employed and was paid by Clark and Johnson. Clark and Johnson controlled his actions, told him what to do and when and how to do it, and there is nothing to suggest that the American Service Company had the right under the contract, or that it in fact ever did, exercise any control whatsoever over him.

On the basis of the foregoing considerations, we are of the opinion that the plaintiff has failed to show any connection of the American Service Company at the time of the accident with the truck or its driver, and therefore that with respect to that company, the judgment of the Circuit Court of Mercer County should be reversed, the verdict of the jury set aside and the case dismissed. In all other respects, the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed in part; reversed in part.*