GEORGE H. LACEWELL, *Admr., etc. v.* J. G. LAMPKIN *et al.*

(No. 9112)

Submitted February 18, 1941. Decided March 4, 1941.

*J. Harper Meredith,* for plaintiff in error.
*Showalter & Boggess,* for defendant in error.

KENNA, PRESIDENT:

In an action for death by wrongful act, George H. Lace-well, administrator of the estate of Geneva Lacewell, recovered a judgment for seven thousand dollars against J. G. Lampkin and Pittsburgh Provision & Packing Company in the Circuit Court of Marion County, and J. G. Lampkin was awarded this writ of error, the other defendant below submitting to the judgment of the circuit court.

On the morning of June the first, 1939, between eight-thirty and nine o'clock in the morning, Geneva Lacewell and Fannie Fortune, both of whom taught in the public schools at Grant Town, distant approximately ten miles from Fairmont on Route 17, a secondary road, were waiting at 26 Pennsylvania Avenue in Fairmont to be driven to Grant Town where their pupils were to assemble for a picnic commencing at ten o'clock. Their expected means of transportation failed to materialize, and Fannie Fortune hailed Loenza Nunn who was passing in a Packard sedan and whom she had known for several years, and with whom Geneva Lacewell was acquainted, and asked him to drive them to Grant Town.

Nunn was an embalming apprentice in the undertaking establishment of the defendant Lampkin, receiving no regular compensation and being given two or three dollars a week as spending money. He speaks of his employment as working as an assistant and states that he drove automobiles for Lampkin "in funerals and other business." Lampkin says that part of his duties was to keep

the passenger cars, of which there were four, clean and supplied with gasoline.

When Fannie Fortune hailed Nunn and asked him to drive them to Grant Town, he told them that he would be obliged to go to the undertaking establishment and get the permission of Lampkin, he then being engaged in having the tank of the car he was driving filled with gasoline pursuant to Lampkin's definite instruction. Upon reaching the place of business, Nunn was told by Lampkin that it would be "all right" to take the two teachers to Grant Town but he, Lampkin, desired to use the car Nunn had been driving so that the Grant Town trip should be made in a seven-passenger Packard sedan, also owned by Lampkin.

Nunn took the large Packard and went at once to fulfill his conditional promise, Fannie Fortune getting in the front seat with him and Geneva Lacewell occupying the right side of the back seat. Nunn's passengers purchased two gallons of gasoline, the estimated amount to fuel the Packard to Grant Town and return, and proceeded on their way toward Grant Town. It was drizzling and the road was wet.

After passing through Rivesville and while on one of the turns of a compound curve, the Packard and a ton and a half refrigerator truck of the defendant, Pittsburgh Provision & Packing Company, loaded with fifty-five hundred pounds of meat, collided. Geneva Lacewell sustained injuries that rendered her unconscious, was taken to a Fairmont hospital where she died several weeks later without regaining consciousness. This action was brought against the owner of the Packard car and of the truck, charging that the servant of each had been negligent and that their combined negligence was the proximate cause of the death of plaintiff's decedent. The petition assigns fifteen reasons for contending that the trial judge erred, including six instructions in one single assignment and six in another. Forty-eight instructions were offered. There are what is tantamount to twenty-five alleged erroneous and prejudicial rulings of the trial judge. It would seem quite apparent that they cannot all be fully

discussed and separately passed upon here, so that, after having made a full examination of the record, this Court will confine its comments to what it considers the salient features that it believes may constitute reversible error.

The jury viewed the scene of the accident prior to the introduction of testimony, and there were a number of demonstrations by the use of different articles before the jury that are not clarified of record, so that this Court, if it so desired, could not pass upon the weight of the entire evidence. The plaintiff below had a civil engineer measure certain dimensions and distances and prepare what may be called a road map, together with a profile, and introduce it as "Plaintiff's Exhibit No. 1," the point of impact being admittedly fixed in so far as the direction of the highway is concerned, but not its transverse location, by a mark on the plat showing the location of a six or eight-inch gash one-half inch wide in the black top of the roadbed, apparently made by a broken part of the underpinning of one of the wrecked vehicles. The truck of the packing company was going south toward Rivesville and its right side of the highway was the outside of the curve. At the point of impact there was a very slight downgrade in the direction the truck was proceeding of 1.65 degrees. There was a berm on the road, the estimated width of which varies, but at the point of collision is shown by the plat to be at least twice the width on the inside of the curve as on the outside, or the truck's side.

Where the accident took place, the outside berm is a few inches lower than the surface of the roadway and beyond the berm not more than four feet is a steep embankment extending ten feet to the creek bottom. The left front of the truck struck the Packard at its left rear door. After the contact the Packard made skid marks ten or fifteen feet in length at an abrupt angle to the right, running forward only about three feet. The truck continued in a southerly direction, its driver being unable to control it due to its damaged condition, went over the bank and turned over on its side.

So far as the circumstances under which plaintiff's decedent was injured are concerned, we believe that we

have outlined all of the uncontradicted testimony. Both the examination and cross-examination of witnesses were exhaustive and painstaking, and, including the minutia of the slightest detail, there is unaccountable disagreement in their statements, due, perhaps, to the fact that in addition to the contention between the plaintiff and the two defendants there is a very pronounced conflict between the defendants themselves. Without attempting to discuss the detail which could not be done free from confusion, we can say only that so far as the negligence of the participants as disclosed by the testimony is concerned, we believe that the trial judge correctly submitted that to the jury, and that there is no showing that would warrant our disturbing the verdict.

The plaintiff in error asserts that the deceased was guilty of contributory negligence because of the fact that she failed to admonish the driver of the car she was in when the truck was seen approaching and "weaving" across the road while several hundred feet away. This point is predicated upon the assumption that a person sitting upon the back seat of a seven-passenger Packard sedan is in a situation to observe an approaching vehicle and should exercise the same vigilance to do. so as a person riding on the front seat. In passing over that question, we must not lose sight of the fact that there were two guest passengers in the Packard, and that Fannie Fortune, who was riding on the front seat with Nunn, testified without contradiction that she did comment upon, and call his attention to, the approaching truck. Assuming the plaintiff's decedent did observe the approaching truck, we believe it is necessary also to assume that she heard the driver of her car cautioned, and that being so, we are of the opinion that decedent was not obligated to repeat that caution.

As we view the record, the decision of this review rests solely upon the question of whether it is a proper instance in which to apply the doctrine of *respondeat superior* predicated upon the relationship of master and servant, or, in other words, conceding that Nunn was generally employed as the servant of Lampkin, did the

collision occur as a result of the performance of Nunn's duties as servant and within the scope of his employment, or was he at that time acting in carrying out a mission of his own? That query and the further determination of whether its answer rests upon a finding of fact at the hands of the jury, we believe, are the deciding factors of this review.

There is no controversy of material fact in determining the nature of Nunn's employment. His duties restricted him to Lampkin's place of business and to driving in funeral processions and on Lampkin's business. The trip to Grant Town plainly was not on Lampkin's business, nor in furtherance thereof. True, before Nunn would leave Fairmont and use Lampkin's automobile, he very properly obtained Lampkin's approval or permission. We do not believe it can be said that he received Lampkin's direction or that the trip from Fairmont to Grant Town amounted to the supervision or direction by Lampkin of Nunn's activities. The two guest passengers purchased two gallons of gasoline in order to defray the actual expense of the trip, and to our mind, that fact coincides with what strikes us as being the undisputed fact that Nunn did not venture upon the disastrous enterprise under the direction, control or supervision of Lampkin, but that he only procured Lampkin's permission to take "time off" and to use Lampkin's car. True, in West Virginia, there is a *prima facie* presumption that the driver of an automobile is acting as the agent of the owner, but that presumption rests upon the owner being in full possession of, and possibly controlling, the information concerning possession and control of the car, and does nothing more than shift the burden of proof. *Malcolm* v. *American Service Co.*, 118 W. Va. 637, 191 S. E. 527; *Jenkins* v. *Spitler*, 120 W. Va. 514, 199 S. E. 368. We are of the opinion that that burden has been overcome by the only defendant below who is now before us.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Marion County as to the defendant, J. G. Lampkin, set aside the verdict of the jury and award the named defendant a new trial.

*Reversed as to J. G. Lampkin; verdict set aside; new trial awarded.*