MARIE WEISMANTLE *v.* MOSES PETROS *et al.*

(No. 9255)

Submitted February 10, 1942.  Decided March 24, 1942.

*Erskine, Palmer & Curl* and *H. Julian Ulrich,* for plaintiffs in error.

*Handlan, Garden & Matthews,* for defendant in error.

ROSE, JUDGE:

This case is here upon writ of error to a judgment of the Circuit Court of Ohio County in favor of Marie Weismantle against Philip Petros and Moses Petros for $3500.00, by way of damages for injuries claimed to have resulted from an automobile accident which occurred February 24, 1940.

The accident took place at the intersection of Richland Avenue and Fifth Street in the Warwood Section of the City of Wheeling. Richland Avenue is 22 feet wide and runs approximately north and south, parallel to the Ohio River, while Fifth Street has a width of 20 feet and extends approximately east and west from the river to the foothills. The avenue is practically level; the street has a slight ascending grade to the eastward. Both streets are paved with concrete. An electric bulb lights the crossing.

On the evening of Saturday, February 24, 1940, the plaintiff and her husband were proceeding westward on Fifth Street in a Chevrolet coupe owned and driven by the husband. When the front of this car had reached the west edge of Richland Avenue it was struck by a Ford truck owned by the defendant, Moses Petros, but being then driven by the defendant, Philip Petros, an infant, who defends this action by a guardian *ad litem.*

The plaintiff received certain bruises and suffered shock, for which the damages were claimed.

The dispute below and here arises principally, if not wholly, in law, and not as to facts. As these legal questions are basic, they will be considered in detail.

The plaintiff relies upon an ordinance of the City of Wheeling, which reads as follows:

"The operator of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has first entered the intersection. When two vehicles enter an intersection at the same

time the operator of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

The plaintiff and her husband each testify that as they entered Richland Avenue they saw the Petros truck approaching from their right at a distance of from 150 feet to one block, and proceeded without further caution, relying on their "right-of-way" as against the truck. The defendants contend that this ordinance is invalid, as being in conflict with the general statute law of the State of West Virginia, found in Code, 17-8-10, as follows:

"An operator of a vehicle shall have the right of way over the operator of another vehicle who is approaching from the left on an intersecting highway, and shall give the right of way to an operator of a vehicle approaching from the right on an intersecting highway."

Philip Petros, the driver of the truck, states that as he approached Fifth Street, he saw the lights of a car coming from the east on that street, but proceeded without further precautions, believing he had the "right-of-way". Thus an issue of law was clearly drawn between the ordinance and the statute.

Regardless of what the law may have been prior to the enactment of Chapter 40, Acts 1933, Ex. Sess., section 32, article 8, of that act specifically authorizes the city to "regulate traffic at street intersections." This section, now Code, 17-8-32, reads thus:

"The provisions of this chapter shall apply in general throughout the State, and, except as provided in the two preceding sections of this article, no political subdivision thereof shall make or enforce any ordinance, order, rule or regulation imposing fines and penalties in conflict with those prescribed in this chapter or increasing or decreasing the speed, size and weight of vehicles as in this chapter defined. But any incorporated city or town in this State shall have power to enact and enforce ordinances and regulations limit-

ing the speed, size and weight of vehicles on such streets, alleys and other public thoroughfares within its limits as are not designated by the state road commissioner as connecting parts of the primary road system, and to regulate or forbid the parking of vehicles upon any designated streets, alleys and other public thoroughfares within its limits, and to regulate traffic at street intersections and in congested districts."

It is admitted that neither Richland Avenue nor Fifth Street had ever been "designated by the state road commissioner as connecting parts of the primary road system." It cannot be disputed that the ordinance in question is a regulation of traffic at street intersections. It, therefore, must be applied to the present case in preference to the statutory rule. Much emphasis is placed by the defendants on the alleged impropriety of allowing every municipality to establish its own peculiar rules in this regard, and on this particular ordinance as encouraging a "race for the crossing." Admitting the force of these arguments, they cannot prevail with us. We find the law otherwise written by those who have the power to write it. And it was so written shortly after this Court had expressly held that the former statutes did not permit city ordinances to vary from the statutory state regulations of highways. *State ex rel. Wells* v. *City of Charleston,* 92 W. Va. 611, 115 S. E. 576.

The defendants, also, undertook to show by evidence that Richland Avenue is a "through" street, and Fifth Street a "stop" street. In this they wholly failed. An ordinance of the city designates as through streets "West Virginia State Route No. 2, U. S. Route 40, and any other street or highway as designated by the traffic commission of the city of Wheeling." But Richland Avenue is not a part of State Route No. 2, nor of U. S. Route 40, nor can any record be found, kept by the traffic commission or by any other official body or officer of the City of Wheeling, by which that avenue is designated as a "through street". It is shown, however, that streets in the city for many years had been frequently treated, at least temporarily,

as "through streets" for a greater or shorter period of time, by the mere placing of stop signs against crossing traffic. While certain officers called as witnesses by the defendants at first hesitatingly stated that such signs had once, and for a time, been placed at some street crossings on Richland Avenue, none would say that any such sign had ever been set at Fifth Street, and all agree that no such sign had been there for some years before the time of this accident. Each of the defendants says that some years before the accident, there had been a stop sign on Fifth Street, but that there was no such sign present at the time of the accident. The defendants, therefore, have totally failed on this issue of fact.

The defendants denied that Philip was the agent or servant of Moses in the operation of the truck at the time of the accident. They are brothers. Their father and mother live at the corner of Richland Avenue and Fifth Street. The elder Petros operated a business of recapping automobile tires at 26th Street. Moses had worked with his father in this establishment, but for about one year before the 24th day of February had maintained his own business of like character in the City of Moundsville, about twelve miles from Wheeling. Philip is under age, and attends high school. He occasionally worked a few hours for both his father and brother Moses. The latter lived in a room over his father's shop. On the evening of the accident, the father was a patient in the Ohio Valley Hospital at Wheeling, where his wife was visiting him. According to the testimony of Philip, about nine o'clock P. M. a telephone call from his mother came to the father's place of business, where he and his brother were, asking him to bring the truck of Moses to the hospital and take her home. According to the defendants, Philip then asked Moses for the use of the truck, explaining the errand, and was given the keys and permission to take the machine. Philip then took his mother home, and drove thence to Sixth Street, at which point he turned about and was returning to take the truck back to Moses at his father's place of business, when the accident occurred. Both defendants insist that the taking of their mother

home was wholly Philip's enterprise. Moses, therefore, takes the position that the rebuttable presumption of the relation of principal and agent between him and Philip which arose from his ownership of the truck is conclusively overcome by this evidence, and that a directed verdict in his favor was imperative under the principle announced in *Hollen* v. *Reynolds,* 123 W. Va. 360, 15 S. E. 2d 163; *Lacewell* v. *Lampkin,* 123 W. Va. 138, 13 S. E. 2d 583; *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368; *Meyn* v. *Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558; *Malcolm* v. *American Service Co.,* 118 W. Va. 637, 191 S. E. 527. The rule invoked, as recognized by this Court, is stated in the *Jenkins* and *Hollen* cases in these words:

> "There is a rebuttable presumption that the driver of another's car is acting about the owner's business. However, if creditable evidence to the contrary is offered, the presumption loses its legal force and only the facts which gave rise to it remain to be considered by the jury, along with the other evidence."

Observe that the "presumption loses its legal force" only in cases where "creditable evidence to the contrary is offered." The converse of this proposition would seem to be that the presumption does not vanish as a matter of law when the evidence on behalf of the adversary is reasonably questionable, or the witnesses not wholly credible. In such cases, the decisive factors become the weight of evidence and the credibility of witnesses, matters which are peculiarly for the jury. In the present case, the credibility of Philip Petros is not only questionable, but is clearly disproved by his own mouth. He had been a witness on two other occasions in actions growing out of this accident, and when confronted by a transcript of his evidence given in those trials, which was in direct contradiction of his present testimony, as to a number of material facts, other than that of his agency for Moses, he unhesitatingly stated in each case that his former testimony was false. He thus becomes, in this case, utterly untrustworthy. No like imputation can be charged against

Moses, but his testimony is thereby left without corroboration, and cannot be given the conclusive effect claimed for it. Besides, the background of the whole transaction is such as to make the theory of agency between the defendants not improbable. The mother's call for assistance in getting home came to the father's place of business where both sons were idling. One furnished the car, the other became the driver. The arrangement might well have been, if not that of principal and agent, a joint enterprise on the part of the two sons. Altogether, the facts in evidence, taken in the aggregate, forbid that the court should undertake to say that, as a matter of law, Moses was not involved in the enterprise on which Philip was engaged. The resolution of this problem was for the jury. "The presumption is not generally overcome as a matter of law by evidence presented on behalf of the defendant by interested witnesses or by evidence which is of a suspicious nature, or by evidence which is impeached to any extent * * *." 9 Blashfield, Cyc. of Automobile Law, p. 396. In accord: *Schultze* v. *McGuire,* 241 N. Y. 460, 150 N. E. 516; *Ferris* v. *Sterling,* 214 N. Y. 249, 108 N. E. 406, Ann. Cas. 1916 D, 1161; *Vernarelli* v. *Sweikert,* 123 Wash. 694, 213 P. 482; *Tischler* v. *Steinholtz,* 99 N. J. L. 149, 122 A. 880; *Home Laundry Co.* v. *Cook,* 277 Ky. 8, 125 S. W. 2d 763; *Randolph* v. *Hunt,* 41 Cal. App. 739, 183 P. 358; *Crockett* v. *U. S.,* (C. C. A. 4th), 116 F. 2d. 646.

On the question of Philip's agency for Moses, a further difficulty in the evidence was developed. Immediately after the accident, Moses brought an action in a justice's court against Arthur Weismantle, the husband of the plaintiff here, for damages to the Petros truck. On the trial of that case in the Intermediate Court of Ohio County on appeal, a stipulation was entered into between the attorneys for the parties (Moses Petros then being represented by other counsel and Arthur Weismantle by the present attorneys for Marie Weismantle), which was in the language following:

> "It is stipulated that the automobile of the plaintiff was owned by Moses Petros at the time of the accident, and at said time Philip Petros

> was operating the automobile, was the brother of
> the owner, Moses Petros, and was operating the
> automobile as servant and agent and employee
> of Moses Petros, and was so operating it within
> the scope of his employment, and in furtherance
> of the business of the owner, Moses Petros."

The plaintiff was permitted to read in evidence in the present case this stipulation, over the defendants' objection, after Moses Petros had testified, out of the hearing of the jury, that he was not present at the trial in the Intermediate Court, was not then in the city, did not know the case was to be tried, thought it had been abandoned, and that he had not authorized, known of, or ratified in any way the stipulation, although he had given to his then attorney full information of the facts in the case. The attorney, although in the city, was not called. The stipulation was admitted, in the language of the trial judge, as "an admission against interest," presumably of Moses Petros. But was it admissible in any aspect of its character? It was not signed by Moses; he was not present when it was made or used; he did not authorize it; he did not ratify it; he did not acquiesce in it; he did not even know that it had been made. Therefore, he cannot be charged with having made those admissions personally. It was made by his legally employed attorney during the actual trial of a case in which Moses was a party. This attorney was not his general agent, and is not shown to have been even his general attorney. He was at most his attorney at law, and that only for the trial of one particular case. His authority was thus confined, and his admissions ordinarily should be likewise limited. Stipulations such as this are in common use in ordinary trials. The record in the present case contains a number of such agreements as to facts. These devices are highly useful in the practical handling of cases in court. In order that such an agreement as to facts, or such a "stipulation," made in the course of a trial, may be admissible in another case against a party on whose behalf it was made, it should be connected with the party personally, or the authority of the agent or attorney to make clearly shown. In 22

Corpus Juris, page 335, the rule as to statements contained in pleadings is stated thus: "* * * the more generally accepted view recognizes a distinction between statements contained in pleadings in another case which are emanations of counsel and those which can fairly be regarded as statements by the party, and as a result, requires, as a condition of admissibility, that the statement be affirmatively connected with the party as one which he has made because it was true." On the question of admissions by agents generally, we held in *Reynolds* v. *W. T. Grant Company*, 117 W. Va. 615, 186 S. E. 603, that "The extrajudicial declarations of an agent, not made under oath, are not admissible in evidence as admissions against the interest of the principal unless the declarations relate to an act within the authorization of the agent in which the agent was engaged at the time the declarations were made." The attorney who made the stipulation here involved was the agent of his client—a peculiar agent, of course, but still an agent. His statement contained in the stipulation in question, viewed simply as an "admission against interest" of the client, did not "relate to an act * * * in which the agent was engaged at the time the declarations were made," but to acts and circumstances wholly in the past, and of which the attorney had no personal knowledge. See also: *Delaware County Com'rs.* v. *Diebold Safe and Lock Co.*, 133 U. S. 473, 10 S. Ct. 399, 33 L. Ed. 674; *Smith* v. *Davidson*, 41 F. 172; *Combs* v. *Hodge* (U. S.), 21 How. 397, 16 L. Ed. 115; *Taylor* v. *Evans*, 102 Ark. 640, 145 S. W. 564; *Rankin* v. *Maxwell's Heirs*, 2 A. K. Marsh Ky., 488, 12 Am. Dec. 431; *Melvin* v. *Whiting*, (Mass.) 13 Pick. 184; *Vogel* v. *Osborne & Co.*, 32 Minn. 167, 20 N. W. 129; *Critchelow's Adm'r.* v. *Hagerman*, 1 Ky. Op. 159; *McDermott* v. *Mitchell*, 47 Cal. 249; *McKane* v. *Dady*, 128 App. Div. 190, 112 N. Y. S. 650; *Bunz* v. *Cornelius*, 19 Neb. 107, 26 N. W. 621; *Meyer* v. *Blakemore*, 54 Miss. 570.

No reason is suggested for treating a statement contained in a stipulation of facts as more widely competent against a party thereto than a statement contained in a former pleading. We perceive no such reason, and are constrained to hold that the admission of the stipulation

from the case in the Intermediate Court was prejudicial error as to the defendant Moses Petros. And since the effect of the stipulation is to establish an agency which Philip Petros denies, its effect is prejudicial to him as further discrediting his whole evidence, including that touching his alleged negligence.

The assignments of error based on instructions given and refused need not be adverted to specially. In each case, the question raised is determined by the conclusions of law reached on the matters hereinbefore discussed. Since there must be a new trial, at which other or different evidence may be introduced, no purpose will be subserved by a discussion of the claimed excessiveness of the verdict.

The judgment of the trial court is reversed, the verdict set aside and a new trial awarded.

> *Reversed; verdict set aside;*
> *new trial awarded.*