FRANK JOHN LASLO

*v.*

WALTER GRIFFITH, *et al.*

(No. 10897)

Submitted January 14, 1958. Decided April 8, 1958.

*Sayre, Lynch & Henderson, G. Berk Lynch,* for plaintiff in error.

*David D. Ashworth, George L. Ballard,* for defendant in error.

HAYMOND, PRESIDENT:

This is an action of trespass on the case instituted in the Circuit Court of Raleigh County in 1955, in which the plaintiff, Frank John Laslo, seeks a recovery from the defendants, Walter Griffith and William Hanks, an infant, for damages for injuries to the person and the property of the plaintiff sustained in a collision between a 1952 model Willys Overland 1-ton motor truck owned and driven by the plaintiff and a 1946 model Dodge automobile owned by Griffith and driven by Hanks on United States Route No. 41 at Stanaford in Raleigh County about eight o'clock in the morning of Sunday, July 24, 1955, which injuries were caused by the alleged negligence of the defendants.

Successive motions made by the defendant Griffith at the conclusion of the evidence offered in behalf of the plaintiff and after the introduction of all the evidence were overruled. The jury returned a verdict in favor of the plaintiff against both defendants for $1200.00. The circuit court overruled a motion of the defendant Griffith to set aside the verdict and grant him a new trial and by order entered December 21, 1956, rendered judgment against both defendants for the amount of the verdict with interest and costs. To that judgment this Court granted this writ of error and supersedeas upon the application of the defendant Griffith on May 13, 1957. The defendant Hanks, for whom a guardian ad litem was appointed, was not represented by counsel at the trial and, no application for a writ of error having been made by him to this Court, within the prescribed time limit, to the judgment against him, that judgment is now final and unappealable.

The defendant Walter Griffith, who will hereafter be referred to in this opinion as the defendant, assigns as

error the action of the circuit court (1) in overruling the motions of the defendant to strike the evidence of the plaintiff and to direct the jury to return a verdict in his favor; (2) in giving, over the objections of the defendant, Instructions Nos. 1 and 3 offered by the plaintiff; (3) in refusing to give Instruction A, in its original form, and Instructions B and G offered by the defendant; and (4) in overruling the motion of the defendant to set aside the verdict and to grant him a new trial.

The principal evidence concerning the manner of the occurrence of the collision, which resulted in painful but temporary personal injuries to the plaintiff and which caused him to lose earnings from his employment at the rate of $18.00 per day for a period of approximately thirteen days, amounting to $234.00, and resulted in damages to his truck in the amount of $1200.00, consisted of the testimony of the plaintiff. He testified that a few minutes after eight o'clock on the morning of Sunday, July 24, 1955, while operating his truck on his right side of a straight downgrade section of United States Route No. 41 in the village of Stanaford in Raleigh County at a speed of twenty to twenty five miles per hour, the automobile owned by the defendant and driven by the defendant Hanks, approaching from the opposite direction on the highway at a speed of forty to fifty miles per hour, veered to its left of the center of the highway when about twenty five feet from the truck and without decreasing its speed struck the truck on its left hand side and knocked it into a ditch; that the impact caused four of six occupants riding in the bed of the truck to be thrown from the truck; and that the automobile of the defendant in which Jess Bragg and another man were riding with its driver continued up the grade for a distance of approximately one hundred feet from the point of the collision and then ran off the highway and came to rest near a billboard sign.

The defendants offered no evidence to controvert the plaintiff's version of the manner of the occurrence of the wreck and did not assert as a defense against the claim

of the plaintiff that Hanks, the driver of the automobile, was not guilty of negligence or that the plaintiff was guilty of contributory negligence. The principal contention of the defendant in support of his assignments of error is that the evidence fails to show that at the time of the collision Hanks was the agent of the defendant and was acting within the scope of his authority to operate the automobile. For this reason the defendant insists upon this writ of error that he is not liable for the negligence of Hanks in the operation of the automobile and that on that ground the judgment of the circuit court should be reversed.

Hanks, who was eighteen years of age at the time of the wreck, who lived with his grandparents at a distance of about 500 yards from a house occupied by Frank Huffman, and who was produced as a witness in behalf of the plaintiff, testified that he was acquainted with the defendant and had driven his automobile on several previous occasions when the defendant had been drinking and was nervous; that, in connection with his use of the automobile, he first saw the defendant about four o'clock in the morning of the day of the wreck when the defendant, accompanied by Jess Bragg, drove the automobile to the house of Frank Bennett; that at the request of the defendant he got in the automobile accompanied by Frank Huffman, Jr.; that the defendant then drove the automobile past the house in which Hanks lived without stopping and continued to drive it to Huffman's home where Huffman left the automobile; that after Huffman had gone to his home Bragg, whom Hanks had never seen before and did not know, said he wanted to go home and that, as the defendant "couldn't drive him", the defendant asked Hanks to drive Bragg home; that Hanks did not know where Bragg lived and that, as Hanks wanted a boy named Gayle Whiting to accompany him on the trip to Bragg's home, the defendant drove the automobile a distance of about a half a mile to Whiting's home; that Hanks inquired of Whiting's mother if he was at home and was informed by her that

he was not there; that the defendant, accompanied by Bragg and Hanks, drove the automobile to a vacant space off the improved road in front of a store operated by a man named Bowles, known as the Hilltop Grocery, a short distance from the home of the defendant; that the defendant had told Hanks that it was "all right" for Whiting to go with Hanks when he took Bragg home; that when the defendant stopped the automobile near his home he told Hanks to take Bragg home, left the automobile, and said he was going to his home; that Hanks then got in the driver's seat and with Bragg in the automobile drove to the home of the Whiting boy and found that he had not yet returned to his home; that Hanks continued to drive the automobile "up and down the road" in search of Whiting, went to the Bennett house and another house at Stanaford, and came back to the Bennett house about seven thirty o'clock; that Whiting was then at the Bennett house and at the request of Hanks got in the automobile with him and Bragg, who had not left the automobile at any time; that Hanks with Bragg and Whiting in the front seat of the automobile started from the Bennett house at Lanark to take Bragg to his home at Abraham and had driven the automobile on the trip for a distance of about two miles when the collision with the plaintiff's truck occurred at Stanaford; that after the collision Hanks left Bragg at the scene of the wreck and ran barefooted to the home of his grandmother which was located about two miles from the place where the collision occurred; that he did not report the collision to the defendant; that at the time of the collision the only occupants of the automobile were Hanks, Bragg and Whiting; that Hanks and Bragg were together from the time they left the defendant about four o'clock until the wreck occurred about eight o'clock; and that while Hanks was with the defendant and Bragg they were not intoxicated and they did not drink any intoxicants in his presence.

Hanks also testified that on July 28, four days after the collision, he was arrested on a warrant obtained by

the defendant charging him with unlawfully taking the automobile without the consent of the defendant, its owner, and depriving the defendant of its possession; that he was taken to the office of a justice and there entered a plea of guilty to the charge. He further testified to the effect that as he did not possess a license to operate an automobile he thought he was entering a plea of guilty to a charge of that offense against him and that he was induced to plead guilty to the charge that he did not possess an operator's license in the belief that he would receive a fine instead of a jail sentence. His testimony concerning his plea of guilty is contradicted by the arresting officer and the justice who testified that Hanks was charged with both offenses by separate warrants; that each warrant was read to him; that he was not induced to plead guilty to either charge by any promise of leniency; that he voluntarily entered a plea of guilty to both charges; and that a fine was imposed for each offense. There is also evidence which indicates that Hanks was absent without leave from military service; that the fines imposed were not paid; and that instead of being committed to jail in default of the payment of the fines he was taken to Charleston and there delivered to the military authorities.

Jess Bragg, who was also called as a witness for the plaintiff, testified that he lived at Abraham which is about twenty five or thirty miles from Piney View where the defendant resided; that he had been acquainted with the defendant for about one year; that on Saturday evening before the collision his brother and the defendant came in the defendant's automobile to the place where the witness was working and that they went to his brother's house which was near the home of the defendant; that the defendant told the witness that he would take him home and the witness agreed to furnish oil and gas for the trip which, however, he did not do; that between nine o'clock and ten o'clock the defendant and the witness started for his home in the automobile driven by the defendant; that they did not go to the home

of the witness but stopped at some other houses in Lanark; that sometime before daylight the defendant drove the automobile to the home of Frank Bennett where Hanks and another boy got in the automobile; that after the other boy left the automobile defendant drove the automobile to the Bowles Store near the home of the defendant; that the witness then asked the defendant to take him home and the defendant said that Hanks could take him and Hanks said that he would go to get "his buddy"; that the defendant then got out of the automobile and Hanks "got under" the driving wheel; that the witness did not see the defendant after the defendant left the automobile until after the wreck had occurred; that the defendant left the automobile about five o'clock or six o'clock and that after looking for Gayle Whiting for an hour or more Hanks found him and he got in the automobile; that they then started on the trip to take the witness to his home and that Hanks was driving the automobile when the wreck occurred; that the witness did not know and had never seen Hanks until Hanks got in the automobile at the home of Frank Bennett; that the witness had been intoxicated until about midnight but became sober by that time; and that he was not intoxicated at the time of the wreck. He admitted, however, that he was arrested at the scene of the wreck on a charge of intoxication and that he entered a plea of guilty to that offense.

Other witnesses produced in behalf of the plaintiff corroborate the testimony of Hanks and Bragg to the effect that the defendant accompanied by Bragg drove his automobile to the Bennett home; that Hanks got in the automobile at that place; that Hanks while driving the automobile inquired for Whiting at other places; that he found Whiting at the Bennett home; and that Whiting got in the automobile with Hanks at that place shortly before the collision occurred.

The defendant testified that he was with Jess Bragg at the home of Jess Bragg's brother about six o'clock or seven o'clock on Saturday evening before the collision

and that they later left that place together in the defendant's automobile; that Bragg asked the defendant to take him to his home at Abraham and that the defendant told Bragg that he might take him home; that later the defendant told Bragg that he would not take him home; that the defendant accompanied by Bragg drove his automobile to the home of Frank Bennett about two o'clock; that Hanks got in the automobile at that place; that the defendant accompanied by Bragg and Hanks drove the automobile to the home of Gayle Whiting about three o'clock; that Whiting was not at his home when they arrived; that the defendant then drove from the Whiting home to a place near his home and the Bowles store where he "pulled off" the main road and stopped the automobile on another road which led to his home; that when the defendant "pulled off" the main road Hanks, who was on the right side of the front seat, reached for and took the key from the ignition; that the defendant told Hanks twice to return the key but he refused to do so; that the defendant became angry, got out of the automobile, went up the hill to the house of his neighbor McCade to get a gun "to scare" Hanks from the automobile; that the defendant did not take a gun from McCade because McCade did not have any shells; that McCade went to the porch of the house and twice told Hanks "to get out of the car and leave it alone"; that the defendant then went to his home to get his gun; that when the defendant came back from his home the automobile had left; that the defendant later went to the house occupied by Bowles who, at the request of the defendant, by telephone reported that the automobile had been taken; that the defendant did not learn of the collision until about nine o'clock that morning when a state policeman came to his home and told him that the automobile had been involved in a wreck; that the defendant then went to the office of a justice and obtained a warrant charging Hanks with unlawful possession of the automobile.

James McCade, a witness in behalf of the defendant, who lived near the home of the defendant, testified that

the defendant came to his home about four o'clock in the morning of July 24, 1955, and asked the witness for his shot gun because some boy was taking his automobile and had taken the key; that the witness told the defendant that he did not have any shells for his shot gun; that the witness went to the porch to see who were in the car; that the persons in the car were trying to start it; that the witness recognized Hanks and called to him "to let that car alone"; that Hanks said "I aint going to bother the damn thing."; that the witness said to him "Well, get out of it,"; that when the witness went back into his house the defendant had left; and that the witness heard the automobile start and noticed the direction in which it traveled.

William F. Bowles, operator of a store at Piney View near the home of the defendant, testified that the defendant came to his home about daylight on Sunday morning, July 24, 1955, and at the request of the defendant the witness by telephone "called State Police."

Ethel Sink, who lived at Stanaford, testified that Hanks came to her home at ten minutes before six o'clock on Sunday morning, July 24, 1955, in an automobile owned by the defendant; that Bragg was also in the automobile; and that Hanks told her that the defendant "got out of the car to go to the house and I slid under the wheel and pulled off and left him."

In rebuttal the officer who arrested Hanks on the warrant obtained by the defendant, called as a witness in behalf of the plaintiff, testified that he had examined the records of the local station of the state police and that there was no record of any report that the automobile of the defendant had been stolen on the morning of the wreck.

Proof that a defendant was the owner of the motor vehicle which caused an injury resulting from the negligence of the driver of such motor vehicle creates a presumption that the driver, when the injury occurred, was in the service of the owner and operating it on

his account. *Gilmore* v. *Huntington Cab Company,* 124 W. Va. 469, 21 S. E. 2d 137; *Lacewell* v. *Lampkin,* 123 W. Va. 138, 13 S. E. 2d 583; *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368; *Malcolm, Admr.* v. *American Service Company,* 118 W. Va. 637, 191 S. E. 527; *Meyn* v. *Dulaney-Miller Auto Company,* 118 W. Va. 545, 191 S. E. 558; *Shahan* v. *Jones,* 115 W. Va. 749, 177 S. E. 774; *Ercole* v. *Daniel,* 105 W. Va. 118, 141 S. E. 631; *Jones* v. *Cook,* 90 W. Va. 710, 111 S. E. 828. The presumption, however, is **rebuttable** and if credible evidence to the contrary is offered the presumption loses its legal force and only the facts which gave rise to it remain to be considered by the jury together with the other evidence. *Gilmore* v. *Huntington Cab Company,* 124 W. Va. 469, 21 S. E. 2d 137; *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368; *Malcolm, Admr.* v. *American Service Company,* 118 W. Va. 637, 191 S. E. 527; *Meyn* v. *Dulaney-Miller Auto Company,* 118 W. Va. 545, 191 S. E. 558; *Shahan* v. *Jones,* 115 W. Va. 749, 177 S. E. 774.

In determining the question of the existence or the nonexistence of an agency in any particular instance the firmly established general rule is that when the facts relied upon to establish the existence of an agency are undisputed, and conflicting inferences can not be drawn from such facts, the question of the existence of the agency is one of law for the court; but if the facts pertaining to the existence of an agency are conflicting, or conflicting inferences may be drawn from them, the question of the existence of the agency is one of fact for the jury. 2 Am. Jur., Agency, Section 454. 3 C. J. S., Agency, Section 330b (1) (a), contains this language: "Ordinarily, agency is a question of fact to be determined by the jury. This is true where agency is in issue or dispute, any competent evidence legally tending to prove the existence of the disputed agency has been adduced, and, from the evidence introduced on the question, there may be a fair difference of opinion as to the existence of the agency, such as where the evidence is conflicting or even where it is undisputed, if reasonable men may differ

in the inference to be drawn therefrom. On the other hand, agency is a question of law for the court where the material facts from which it is to be inferred are not in dispute and only one reasonable conclusion can be drawn therefrom."

"Where the facts are undisputed, the question of agency arising therefrom should be determined by the court, and not submitted to the jury." Point 1, syllabus, *Moore* v. *Burriss,* 132 W. Va. 757, 54 S. E. 2d 23; point 3, syllabus, *Bank of White Sulphur Springs* v. *Lynch,* 93 W. Va. 382, 116 S. E. 685. In *Shahan* v. *Jones,* 115 W. Va. 749, 177 S. E. 774, this Court held that "In an action against the owner of an automobile for damages resulting from its negligent operation by another, the issue of whether the driver was, at the time of the injury, the agent of the owner may be submitted to the jury upon the denial of the driver and owner and substantial countervailing evidence or circumstances." In *Nees* v. *Julian Goldman Stores, Inc.,* 109 W. Va. 329, 154 S. E. 769, this Court also held in point 1 of the syllabus that "The test of liability of the principal for the tortious act of his agent is whether the agent at the time of the commission of the act was acting within the scope of his authority in the employment of the principal, and not whether the act was in accordance with his instructions. If such act be done within the scope of authority, and in furtherance of the principal's business, the latter is responsible. And where the evidence and circumstances are in sharp conflict respecting the scope of the authority of the agent, a jury question arises which should be submitted with proper instructions." See also *Nees* v. *Julian Goldman Stores, Inc.,* 106 W. Va. 502, 146 S. E. 61.

On the questions of whether Hanks was the agent of the defendant and whether he was acting within the scope of his authority and in behalf of the defendant at the time of the collision the evidence is conflicting. There is evidence to show that the defendant directed or requested Hanks to use the automobile to take to his home Bragg, his acquaintance with whom he associated

from approximately seven o'clock in the evening until sometime past midnight when Hanks and Bragg, who were strangers, met each other for the first time; that the defendant was aware that Hanks, who did not know the way to Bragg's home, wanted Whiting to accompany him on that trip; that the defendant drove the automobile to Whiting's home where Hanks sought to find him; that the defendant at least permitted Hanks to drive the automobile while he was looking for Whiting after the defendant had left it; and that after Hanks found Whiting at the Bennett home Hanks had started on the trip to carry out the defendant's direction or request when the collision occurred. On the contrary the evidence in behalf of the defendant is to the effect that Hanks abruptly seized the automobile and, contrary to the wishes of the defendant, drove it on a mission of his own until it collided with the truck of the plaintiff. Upon this conflict in the evidence the circuit court was fully justified in applying the rule that when the evidence is conflicting the questions whether the relation of principal and agent existed and, if so, whether the agent acted within the scope of his authority and in behalf of his principal are questions for the jury; and the action of the circuit court in submitting those questions to the jury was correct and proper.

Under the conflicting evidence in this case bearing upon the question of agency the jury could have returned a verdict either for the plaintiff or for the defendant Griffith. The verdict shows that the jury believed the testimony in behalf of the plaintiff and the verdict is amply supported by the evidence.

The verdict of a jury on the questions whether the driver of an automobile was the agent of the defendant and was acting within the scope of his authority and in behalf of the defendant will not be disturbed by this Court if there is sufficient evidence to support the verdict. *Gilmore* v. *Huntington Cab Company,* 124 W. Va. 469, 21 S. E. 2d 137. "The verdict of a jury will not be set aside for insufficient proof upon review in this court

unless it appears plainly to be against the weight and preponderance of the evidence, or unless it lacks evidence essential to support it." Point 1, syllabus, *Malcolm, Admr. v. American Service Company*, 118 W. Va. 637, 191 S. E. 527. This Court has held that when a case, involving conflicting testimony and circumstances, has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it. *Wilson v. Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher v. Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376; *Yuncke v. Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *Dangerfield v. Akers*, 127 W. Va. 409, 33 S. E. 2d 140; *Ware v. Hays*, 119 W. Va. 585, 195 S. E. 265. See also *Dodrill v. Young*, 143 W. Va. 429, 102 S. E. 2d 724; *Davis v. Sargent*, 138 W. Va. 861, 78 S. E. 2d 217; *Webb v. Brown and Williamson Tobacco Company*, 121 W. Va. 115, 2 S. E. 2d 898.

The defendant cites and relies upon several decisions of this Court, particularly the cases of *Alloy, Admrx. v. Hennis Freight Lines, Inc.*, 139 W. Va. 480, 80 S. E. 2d 514; *Lacewell v. Lampkin*, 123 W. Va. 138, 13 S. E. 2d 583; and *Jenkins v. Spitler*, 120 W. Va. 514, 199 S. E. 368, in support of his contention that Hanks was not the agent of the defendant and was on a mission of his own at the time of the collision. The marked difference between the facts in those cases and the facts in this case renders those cases clearly distinguishable from the case at bar. For that reason the holding in each of those cases concerning the question of agency does not apply to or control the decision of this case.

Careful consideration of the instructions mentioned in the assignments of error discloses no prejudicial error in the action of the circuit court in giving Instructions Nos. 1 and 3, offered by the plaintiff, or in refusing to give Instruction A, in its original form, and Instructions B and G offered by the defendant.

The judgment of the Circuit Court of Raleigh County is affirmed.

*Affirmed.*